John T. LANGDON, as Insurance Commissioner of the State of Wyoming, and the Wyoming Department of Insurance, Appellants (Plaintiffs),

v.

AETNA LIFE INSURANCE COMPANY, et al., Appellees (Defendants).

AETNA LIFE INSURANCE COMPANY, et al., Appellants (Defendants),

v.

John T. LANGDON, as Insurance Commissioner of the State of Wyoming, and the Wyoming Department of Insurance, Appellees (Plaintiffs).

Nos. 5582, 5583.

Supreme Court of Wyoming.

Feb. 22, 1982.

Glenn Parker and W. Douglas Hickey, of Hirst & Applegate, Cheyenne, for Aetna Life Ins. Co.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Senior Asst. Atty. Gen., Sharon A. Lyman, Asst. Atty. Gen., and Kelly S. Davis, Sp. Asst. Atty. Gen. (argued), for Insurance Commissioner, et al.

Ward A. White, of Guy, Williams, White & Argeris, Cheyenne, for World Service Life Ins. Co.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

The appeals in both of these cases are from the same order of the district court. The Insurance Commissioner and the Wyoming Department of Insurance (hereinafter referred to as Insurance Commissioner) are appellants in Case No. 5582 and are appellees in Case No. 5583. Eighty-five insurance companies [1] (hereinafter referred to as Insurance Companies) are appellees in Case No. 5582 and are appellants in Case No. 5583. One insurance company, World Service Life Insurance Company (hereinafter referred to as World), is not a party to the appeal in Case No. 5583, but is an appellee in Case No. 5582. The order appealed from dismissed the action brought by Insurance Commissioner because it was not yet ripe—the statutorily mandated administrative requirements had not been met—for disposition by the district court.

We affirm.

The underlying problem in this case concerns the manner in which the Insurance Companies and World reported, and paid taxes on, premium income from group life and group disability insurance covering group members or policyholders residing in two or more states, one of which is Wyoming. The Insurance Companies contend that the "universal and accepted" method employed in every state for the allocation of premiums in such instances is a rule known as the "500-Life Rule"[2], which provides:

"For groups of less than 500 lives the Group Life Insurance premiums are allocated to the state in which the employees are principally located; for groups of 500 or more lives the Group Life Insurance premiums are distributed by states in accordance with the locations of the various employees. * * * *"

The Insurance Companies contend that such allocation has been accepted by the Insurance Commissioner for many years, and that § 26–4–103(a), W.S.1977 directs such allocation. Section 26–4–103(a) reads:

"Each authorized insurer and each formerly authorized insurer shall file with the commissioner on or before March 1 each year a report in form as prescribed by the commissioner showing (except with respect to wet marine and transportation insurance as defined in section 26.-1–89 [§ 26–5–107]) total direct premium income including policy, membership and other fees, and all other considerations for insurance and annuity contracts, whether designated as premium or otherwise, and in whatever form received by it during the next preceding calendar year on account of policies and contracts covering property, subjects, or risks located, resident, or to be performed in this state (*with proper proportionate allocation of premiums or consideration as to such persons, property, subjects, or risks in this state insured or covered under policies or contracts covering persons, property, subjects, or risks located or resident in more than one (1) state*), after deducting from such total direct premium income (i) the amount of return premiums on cancelled policies (but not including the return of cash surrender values on life policies or annuity contracts), (ii) the amount returned to policyholders as current dividends, and (iii) as to domestic title insurers, that portion of the premium chargeable to title search and examination services as reasonably determined by the commissioner. For good cause shown by the insurer, the commissioner may, in his dis-

---

1. One hundred forty-seven insurance companies were named defendants in the complaint of Insurance Commissioner. Sixty-one of them were dismissed from the action by stipulation or otherwise before the entry of the order from which appeal is here taken. The order of dismissal did not set forth the names of all parties as required by Rule 7(b)(2), W.R.C.P.

2. In its opinion letter, the district court noted that:

"However, in examining the rule advocated by the various insurers in this matter, one is struck by the significant number of variations in application of the Rule of 500 Lives and with the virtually limitless number of permutations available to the insurance industry with regard to the application of this so-called rule of 'universal' application. * * *"

cretion, extend for not over thirty (30) days the period within which such report shall be filed." (Emphasis added.)

World contends that it does not have sufficient contacts with the State of Wyoming to justify regulation and taxation by the State of Wyoming, and that it can establish this position as a matter of fact. It argues that the order of the district court is proper.

Insurance Commissioner contends that the premium income should be allocated for purpose of the tax solely on the basis of the residency or location of the persons, subjects or risks (in effect, reading § 26–4–103(a) as if the emphasized language therein, supra, were deleted). The prayer of Insurance Commissioner's complaint reads as follows:

"WHEREFORE the Plaintiffs pray the Court for an order:

"1. Directing each of the above-named Defendants to satisfy its tax debt to the State of Wyoming for the years 1977, 1978 and 1979; and

"2. Directing each of the above-named Defendants to proportionately allocate and report to the Insurance Commissioner of the State of Wyoming, for premium tax purposes, the premiums and considerations as to any person, subject or risk located in the State of Wyoming insured or covered under policies or contracts covering persons, subjects or risks located or resident in more than one state by such method that allocates and reports to Wyoming premiums and considerations collected or received from, for or in behalf of said Wyoming persons, subjects or risks; and

"3. Ordering that each Defendant pay a fine of one thousand dollars ($1,000.00) for each violation of the Insurance Code as a civil penalty as authorized by W.S. 26–1–115; and

"4. Declaring that W.S. 26–4–103 requires apportionment of premium by residency of the risk for premium tax purposes.

"5. Granting any and such other relief as the Court deems just and equitable."

After some discovery, Insurance Commissioner and Insurance Companies both moved for summary judgment and supported the motions with affidavits. After receiving briefs and hearing arguments, the district court set forth its reasons for dismissal of the complaint in a nine-page opinion letter which was incorporated by reference into the order of dismissal.

■ Inasmuch as we agree with the reasoning of the district court, we set forth, with approval, much of that reasoning as contained in its letter opinion. Before doing so, however, we note that the Insurance Commissioner did not seek or obtain an opinion of the attorney general relative to the legal issues involved in this matter before presenting them to the district court.

"(a) The attorney general * * * shall be the legal adviser of all elective and appointive state officers * * * and shall, when requested, give written opinions upon questions submitted to him by such officers * * *." Section 9–2–505(a), W.S. 1977.

Court determination may be necessary on issues already presented to the attorney general for an opinion (see *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974)), but it is not contemplated that state officers and agencies may routinely present their inquiries to the district court for guidance. Should such be approved, there would be little need for future attorney general opinions. All officers and agencies could file an action such as this in the district court to obtain an advisory opinion from the court on all of their legal problems.

In its review of the administrative procedure mandated by statutes, the district court referred to the fact that:

" * * * no order directing compliance with the statute has been issued by the Insurance Department; no proceedings have been initiated to enforce the law in accordance with statutory provisions; no proceedings for rule-making to interpret the statutory provision in accordance with the contentions of the department and applying the peculiar expertise and

knowledge of the insurance industry possessed by the Insurance Commissioner and the Department has occurred. * * *"

It then made the following analysis of the matter here presented to it vis-a-vis statutorily directed procedure:

"In examining the power of the Commissioner concerning the collection of premium taxes pursuant to § 26–4–104 W.S. the Court notes that the Legislature in W.S. 26–4–105 has directed what activities the commissioner should take to collect tax.

" '(a) The taxes imposed under §§ 26.-1–80 and 26.1–81 [§§ 26–4–103 and 26–4–104] shall be collected by the commissioner and paid by him to the state treasurer to the credit of the general fund.

" '(b) If such tax is not paid by the insurer on or before March 31st of the year in which due, the tax shall then become delinquent, and payment thereof may be enforced by the commissioner by the seizure, distraint and sale of any property of the insurer within Wyoming, or by any other lawful means. Upon the tax becoming delinquent the commissioner shall suspend or revoke the insurer's certificate of authority.'

"The 'lawful means' available to the Commissioner would most appropriately be defined in the Insurance Code since the powers of administrative agencies are measured by the statutes enabling the agency to act and by the fair implication of those statutes. 1 Am.Jur.2d, Administrative Law § 72. This principle is especially reiterated in § 26–2–109 W.S. which provides:

" '(c) *Authority generally.*—The commissioner shall have the powers and authority expressly conferred upon him by or reasonably implied from the provisions of this code.'

"What express authority rests in the Insurance Commissioner by virtue of the Wyoming Statutes? Section 26–2–112 W.S. expressly permits the Commissioner through the office of the attorney general to seek court assistance in enforcement of his orders.

" 'The commissioner, upon the advice [of] and through the attorney general, may invoke the aid of the courts through injunction or other proper process, mandatory or otherwise, to enforce any proper order made by him or action taken by him.' [3]

"This section would seem to be limited to some sort of relief through the courts by way of enforcing an order or action taken by the Commissioner. The next subsection permits criminal prosecutions to be initiated through the office of the Attorney General or the County Attorney of the county having jurisdiction of the violation. Undoubtedly, this provision would require a showing of probable cause for the action to go forward in the District Court. The final subsection of the above statute provides for a penalty to be imposed by the Court (presumably

---

**3.** Following is the full text of § 26–2–112, W.S. 1977:

"(a) *Injunctions.*—The commissioner, upon the advice of and through the attorney general, may invoke the aid of the courts through injunction or other proper process, mandatory or otherwise, to enforce any proper order made by him or action taken by him.

"(b) *Assistance of attorney general and county attorneys.*—If the commissioner has reason to believe that any person has violated any provision of this code, or any provision of other law as applicable to insurance operations, for which criminal prosecution is provided and would be in order, he shall give the information relative thereto to the attorney general or to the county attorney of the county having jurisdiction of such violation. The attorney general or county attorney shall promptly institute such action or proceedings against such person as in his opinion the information may require or justify.

"(c) *Violations of orders.*—In addition to any other applicable penalty, any person who violates a lawful order of the commissioner shall upon proof thereof to the satisfaction of the court, forfeit and pay to the state of Wyoming a sum not to exceed one thousand dollars ($1,000.00), or, if such violation is found to be willful, a sum not to exceed two thousand dollars ($2,000.00). Any such penalty may be recovered in a civil action against the violator."

District Court) when it is shown that any person has violated a lawful order of the Commissioner. The penalty is recovered in a civil action against the violator; however, the key to this subsection appears to be the violation of a lawful order.

"Court action is also authorized in § 26–1–115 W.S.,[4] the last subsection of which was amended in 1979 to raise the potential penalties to a substantial degree. The first paragraph of this statute provides for a misdemeanor prosecution for violations of the Insurance Code; however, it is of special interest to note the language that provides that this paragraph applies for violations of the code 'for which a greater penalty is not provided by another provision of this code or by other applicable laws of this state.' The maximum penalty for violation under the first paragraph would be a fine of $1,000.00 or imprisonment in the county jail for not more than six months or by both fine and imprisonment. At first glance it would seem to the undersigned that the applicability of the first para-

graph of § 26–1–115 is severely limited by the enactment of paragraph (b) of the statute, which provides 'a greater penalty.' One wonders whether or not the Legislature intended to repeal paragraph (a). However, since the second paragraph provides for a civil penalty as opposed to a criminal penalty it is to be assumed that this was not the case. Nevertheless, in examining the relief requested before the Court in this instance it should be noted that although the request is based upon § 26–1–115 W.S. that no action has been initiated under paragraph (a) for prosecution of a misdemeanor offense. I would assume that the penalty sought would be pursuant to paragraph (b) of the same statute. Here again, however, an action is contemplated before the Insurance Commissioner by which he gives written notice to the person accused of the violation and affords a hearing at which the Commissioner determines the amount of the civil penalty. In this case no such hearing was conducted. Detailed provisions are contained in

---

4. Following is the full text of § 26–1–115, W.S. 1977, Cum.Supp.1981:

"(a) Each violation of this code for which a greater penalty is not provided by another provision of this code or by other applicable laws of this state, in addition to any applicable prescribed denial, suspension, or revocation of certificate of authority or license, shall be a misdemeanor and shall be punishable upon conviction by a fine of not more than one thousand dollars ($1,000.00), or by imprisonment in the county jail for not more than six (6) months or by both such fine and imprisonment in the discretion of the court. Each instance of such violation shall be considered a separate offense.

"(b) Any person who violates any provision of the insurance code, any lawful rule or final order of the commissioner or any final judgment or decree made by any court upon application of the commissioner, shall forfeit and pay a civil penalty in an amount determined by the commissioner of not more than two thousand five hundred dollars ($2,500.00) for each offense, or twenty-five thousand dollars ($25,000.00) in the aggregate for all such offenses within any three (3) month period. In the case of individual agents or adjusters, the civil penalty shall be not more than five hundred dollars ($500.00) for each offense or five thousand dollars ($5,000.00) in the aggregate for all such of-

fenses within any three (3) month period. The penalty shall be collected from the violator and paid by the commissioner, or the appropriate court, to the state treasurer to the credit of the general fund. Before the commissioner imposes a civil penalty, he shall give written notice to the person, agent or adjuster, accused of a violation, stating specifically the nature of the alleged violation and fixing a time and place, at least ten (10) days thereafter, when a hearing of the matter shall be held. After hearing or upon failure of the accused to appear at the hearing, the commissioner shall determine the amount of the civil penalty to be imposed in accordance with the limitations expressed in this subsection. Each violation shall be deemed a separate offense:

"(i) Such civil penalty may be recovered in an action brought thereon in the name of the state of Wyoming in any court of appropriate jurisdiction;

"(ii) In any court action with respect to a civil penalty, the court may review the penalty as to both liability and reasonableness of amount;

"(iii) The provisions of this section are in addition to and not in lieu of any other enforcement provisions contained in the insurance code."

§§ 26–3–119 and 26–3–120 W.S. for suspension or revocation of insurers' certificates of authority in the event a finding is made after a hearing that an insurer has violated or failed to comply with any lawful order, has wilfully violated or failed to comply with a lawful regulation or has violated a provision of the code for which suspension is mandatory. Also, detailed procedures are set forth in the code for the conduct of the Commissioner's hearing of these matters.

"With this background is the Insurance Commissioner required to take any action or authorized to do so by statute? Clearly § 26–4–105 W.S. mandates that the Commissioner take certain actions in the event of a failure to pay taxes. * * *

* * * * * *

"As noted in § 26–3–119 W.S. the Commissioner is required to take action in this instance.

" '(a) The commissioner shall refuse to continue, or shall suspend or revoke an insurer's certificate of authority:

" '(i) If such action is required by any provision of this code; * * *.'

"Clearly no such action was initiated here.

"Given the expertise possessed by the agency with regard to interpretation of the statutory structure, which controls its activities, it would seem that it would be appropriate that the agency construe and interpret the statute in question. This would appear to be an affirmative duty of an administrative agency pursuant to § 9–4–102(a) W.S. which provides in material part:

" 'In addition to other rule-making requirements imposed by law, each agency shall: * * *

" '(ii) Make available for public inspection all rules and other written statements of policy or interpretations formulated, adopted or used by the agency in the discharge of its functions; * * *.'

"It would further seem that the language contained in *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347, 1350 [1974] is appropriate in this situation.

" 'Declaratory judgment should not be used to usurp or replace specific administrative relief, particularly when the initial decision is committed to an administrative body.'

"The above remarks of the Supreme Court would seem to be equally appropriate in situations where the agency is seeking declaratory relief, especially when no authority appears to exist, enabling the agency to proceed in such a manner. * * * "

None of the parties, except World, are satisfied with the disposition made by the trial court. Insurance Commissioner comments thereon in part:

" * * * The picture painted by the Court is one in which the Insurance Commissioner has one and only one course of action he may take in dealing with premium tax deficiencies, that being to seize and sell property while suspending or revoking the insurer's certificate of authority. * * *

" * * * If the procedure preferred by the District Court were to be followed, the burden upon the insurance-buying public, the industry and the agency would be no slight matter. Believing the Rule of 500 Lives results in a delinquency, the Insurance Commissioner would have to suspend or revoke the certificates of authority of more than ten percent of the companies currently doing business in Wyoming. The amount of such delinquent taxes would have to be determined at a great cost to the companies which in turn would be passed on to the policyholders. * * * "

However, the district court opinion did not point to "one and only one course of action" to be taken by the Insurance Commissioner. The opinion noted the opportunity for the Insurance Commissioner to apply the expertise of the agency to the issue and promulgate a rule relative thereto. A rule is " * * * each agency statement of general applicability that implements, interprets, and prescribes law or policy * * *." Section 9–4–101(b)(vii), W.S.1977, Cum.

Supp. 1981. If Insurance Companies or World were dissatisfied with the implementation or interpretation of the law as set forth in the rule, they could make the dissatisfaction known in connection with a hearing on the rule. The Insurance Commissioner may agree with their position, or he may not. If not, they would have the normal appeal access to the courts on the matter. Hearings on such issues are provided for in the Insurance Code. See §§ 26–2–125 through 26–2–129, W.S.1977. The drastic measures suggested by the Insurance Commissioner as an alternative to the filing of this action are not necessary.

■■ It is obvious that it would be improper to grant the injunctive type of relief requested by the Insurance Commissioner in this action, i.e., direct payment of tax debt of unknown amount for years of 1977, 1978 and 1979; direct report of proportion of premiums collected on persons, subjects or risks located or resident in Wyoming and covered by policies in which such risks are in more than one state; and ordinary payment of fines as civil penalties, inasmuch as the requisite foundation for such does not exist. The obligation for the payment of such taxes has not been ascertained. The Insurance Companies and World have not been requested to make the designated reports or pay the taxes. Insurance Commissioner states that:

"* * * [T]he Insurance Commissioner and Department are uncertain whether or not a delinquency actually exists * * *."

The foregoing analysis of the district court relative to the propriety of such type of relief is accurate.

The same can be said with reference to the remaining requested relief, i.e., that the court declare § 26–4–103 requires apportionment of premium by residency of the risk for premium tax purposes. In this action, the Insurance Commissioner is asking the court to advise him relative to which of two actions he should take in connection with requiring allocation of premiums on policies covering multi-state risks. He has not taken official administrative action on the issue one way or the other. If he had taken such action, the Insurance Companies and World may have agreed with him. A judicial controversy may not have arisen. Sixty-one of those named defendants in the complaint filed by Insurance Commissioner in this action are no longer parties. Apparently, it was determined somewhere along the line that there was no controversy as far as they were concerned. On the other hand, after taking such action, Insurance Companies and World may not have agreed with him. If the resulting hearing had by the Insurance Commissioner did not conclude with a determination satisfactory to all concerned, the existing controversy could properly be presented to the courts on appeal from that conclusion. It is possible that other circumstances may enter the picture and that the controversy may have sharpened sufficiently after the hearing to justify a declaratory judgment action. However, as the matter now stands the court is being asked to render an advisory opinion on a matter not ripe for a declaratory judgment.

In 1944, we said in *Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318, 348:

"'There is no power granted by this act to give advisory opinions in moot cases * * * or pass upon contingent or uncertain situations * * *.' Quoting from *Ladner v. Siegel*, 294 Pa. 368, 144 A. 274, 275. "'It may now be fairly said to be a uniform rule of construction in these states that proceedings for a declaratory judgment will not be entertained where another equally serviceable remedy has been provided for the character of case in hand.'" Quoting from *Stewart v. Herten*, 125 Neb. 210, 249 N.W. 552, 554. See *Wyoming Humane Society v. Port*, Wyo., 404 P.2d 834 (1965); *Mountain West Farm Bureau Mutual Insurance Company v. Hallmark Insurance Company*, Wyo., 561 P.2d 706 (1977); *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347 (1974).

And in 1979 in an opinion authored by Justice Guthrie, we said in a case in which the state land board brought a declaratory

judgment action seeking determination of rights of various parties in certain school lands which the board sought to sell at public auction:

"* * * We disapprove, however, of the Board using the vehicle of a declaratory judgment suit to obtain a review of the validity of its own decision. The factual posture of this case makes the following most appropriate:

"'Courts do not have the power to give legal advice or opinion. "The relief sought should not merely be legal advice by the courts or to give an answer to satisfy curiosity." [citing authorities] "It was not the intent of the Declaratory Judgment Statute to confer jurisdiction on the courts to be legal advisers of all the political subdivisions of this State . . . ." *Collins v. Horten,* Fla.App., 111 So.2d 746, 751 (1959).'

"The stipulation of facts upon which the trial court made disposal of this case contains nothing which would demonstrate any present, real controversy between these parties. The stipulation does recite the fact that the Board of Land Commissioners had held that these appellants had a preferential right to meet the highest bid for this land and further recites that this decision was not appealed. The only other mention of this right is that the State on December 26, 1972, notified the defendant that they 'will not be granted a preferential right at the January 26, 1973, sale.'

"We have heretofore recognized that the Declaratory Judgment Act gives the courts no power to determine future rights of anticipated disputes or controversies and must treat them as existing and genuine. *Cranston v. Thomson,* Wyo., 530 P.2d 726, 728–729 (1975). The statement in the letter clearly sets out an intention to deny this right in the future. "In face of the fact that there is an existing and unappealed order of the Land Commissioners granting to appellants such preference right and under which they claim, this record, by virtue of the stipulation and letter of the Commissioner of December 26, puts into proper perspective what is sought by this action. It would appear that the appellees in effect proposed to the lower court that this court should advise them whether this unappealed order is still in force and effect or whether the Commissioner can properly overrule the Board and set aside such unappealed order.

"This is a request for legal advice and opinion as to the effect of the Commissioner's action and to ask the court which governs, yet this question can only arise in the event appellants exercise such right to meet the bid after such sale and in the future. It is altogether possible that the bid might be in excess of what the appellants believe to be the value of the land, it might be beyond their resources, or they might simply lose interest in buying this land. From this, it is apparent that any decision would be the 'determination of a future right' and that the relief sought is for 'an anticipated controversy.'

"The first count of the Board's complaint attacking its own ruling did not raise an actual controversy within the strictures of our Declaratory Judgment Act, and the district court lacked jurisdiction to properly consider it. Having no greater jurisdiction of this issue than did the district court, we are obligated to order the dismissal of this count. *Ginn v. Parrish,* Wyo., 362 P.2d 824, 828 (1961). * * *" (Footnote omitted.) *White v. Board of Land Commissioners,* Wyo., 595 P.2d 76, 79–80 (1979).

Such law is applicable to the circumstances of this case. Accordingly, this matter was not proper for declaratory judgment action by the district court.

■ Finally, we do not agree that the issue presented in this case is such as to warrant the application of the exception to the usual requirements for jurisdiction in a declaratory judgment action, i.e., that the issue is of "such great and overriding public moment as to constitute the legal equivalent" to such requirements. *Brimmer v. Thomson,* supra, 521 P.2d at 578. Premium

taxes have been collected for many years by the Insurance Commissioner under the presently existing standards. In this action the Insurance Commissioner anticipated collection of such taxes under a different standard for only three of the immediately prior years. The Insurance Companies and World contest the legality of such retroactive application of the new standard. We need not address this issue, but mention the situation only to emphasize the lack of "great and overriding public moment" in it. The basis for urgency in a change of the long-standing standard has not been evidenced.

The legal propriety of the new standard suggested by the Insurance Commissioner is not an issue which will become moot by the passage of the time necessary to determine it pursuant to the Administrative Procedure Act and the Insurance Code. Such was not the case in *Brimmer v. Thomson,* supra. There an answer to the question as to whether or not certain persons could be candidates for public office would become useless after the election procedure and process were under way.

Affirmed.