**STATE BOARD OF EQUALIZATION; Wyoming State Tax Commission; Rudolph Anselmi, Reina Hakala and Shirley Wittler, in their official capacities as members of the State Tax Commission and State Board of Equalization, Appellants (Defendants),**

v.

**JACKSON HOLE SKI CORPORATION, a Wyoming corporation, Big Valley Corporation, d/b/a Grand Targhee Resort, Triangle X Ranch, Glenn Taylor, Ken Neal and Western Mountain Adventurers, Inc., d/b/a Teton Valley Ranch Camp, Inc., on behalf of themselves and other members of the Wyoming Outfitter's Association and other Wyoming members of the Dude Ranchers' Association, Appellees (Plaintiffs).**

No. 86–298.

Supreme Court of Wyoming.

May 22, 1987.

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Robert J. Walters, Asst. Atty. Gen., for appellants.

David R. Hansen, Jackson, for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellee Jackson Hole Ski Corporation brought an action in district court pursuant to the Uniform Declaratory Judgments Act, § 1-37-101 et seq., W.S.1977, seeking an interpretation of the Selective Sales Tax Act of 1937, § 39-6-401 et seq., W.S.1977, and a determination of the validity of rules and regulations adopted by appellants Wyoming State Tax Commission and State Board of Equalization. During the pendency of the proceedings, appellees Big Valley Corporation, Triangle X Ranch, Glenn Taylor, Ken Neal, and Western Mountain Adventurers, Inc. filed motions to intervene. The district court granted the motions and, after a trial to the court, entered judgment in favor of appellees.

We affirm.

Appellants raise the following issues on appeal:

"I. DO THE APPELLEES HAVE STANDING TO CHALLENGE THE RULES AND REGULATIONS OF THE APPELLANTS IN AN INDEPENDENT ACTION FOR DECLARATORY RELIEF IN THEIR CAPACITY AS VENDORS?

"II. HAVE APPELLEES FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED CONCERNING THE AVAILABILITY OF AN INDEPENDENT ACTION FOR DECLARATORY RELIEF TO CHALLENGE RULES AND REGULATIONS WHICH ARE NOT ACCOMPANIED BY AN OTHERWISE JUSTICIABLE CONTROVERSY BETWEEN THE PARTIES?

"III. IS APPELLANTS' CONSTRUCTION OF W.S. 39-6-404(a)(viii) UNREASONABLE OR CONTRARY TO LAW? "IV. ARE APPELLANTS ESTOPPED FROM REQUIRING COLLECTION OF LAWFULLY DUE TAXES CONSIDERING INCONSISTENT INTERPRETATIONS OF THE RELEVANT STATUTES AND A LACK OF ENFORCEMENT OF TAXABLE TRANSACTIONS?"

On July 3, 1985, the revised Rules and Regulations of the Wyoming State Tax Commission were filed with the Secretary of State and included the following:

"Section 44. *Admission Charges.*

"(a) * * * [W]hen a park, grounds or outdoor facility is leased or rented or a concession is granted for the use thereof in whole or in part for any form of amusement * * *, the lessee shall collect the tax on the total amount paid for admission to all such places."

"Section 48. *Resorts and Dude Ranches.*

"(a) * * * Beginning January 1, 1986, all charges by resorts, dude ranches, hunting and fishing outfitters, float trip operators, ski resorts and similar vendors for sales of goods, services and admissions are taxable. Taxable sales include, but are not limited to, sales of meals, lodging, pack trips, float trips, guided trips, trail rides, admission to indoor and outdoor recreational facilities and sales of tangible personal property.

"(b) Charges for transporting persons by horseback, motor vehicle, helicopter, fixed-wing aircraft, ski lift, boat or raft for hunting, fishing, skiing, camping, or similar recreational purposes are taxable."

On December 24, 1985, appellee Jackson Hole Ski Corporation filed a complaint for declaratory and injunctive relief, alleging that the imposition of sales tax on the sales price paid for lift ticket services, alpine ski instruction services, summer sightseeing services, nordic ski school instruction services, and nordic and alpine ski guide services was in contravention of the authority granted appellants in the Selective Sales Tax Act of 1937. Appellees requested an order declaring the rules null and void and enjoining appellants from imposing a tax on the sales price paid for such services.

Thereafter, appellee Big Valley Corporation filed a motion to intervene in the action pursuant to Rule 24(b), W.R.C.P. In its complaint, Big Valley Corporation also alleged that the imposition of sales tax on lift ticket services exceeded the authority granted to appellants in the Selective Sales Tax Act of 1937. The district court granted the motion to intervene on April 1, 1986. On May 19, 1986, appellees Triangle X Ranch, Glenn Taylor, Ken Neal, and Western Mountain Adventurers, Inc., on behalf of themselves and other members of the Wyoming Outfitter's Association and other Wyoming members of the Dude Ranch Association of the Western States, also filed a motion to intervene. In their complaint of intervention, they alleged that appellants did not have authority to impose sales tax on the entire sales price paid for hunting guide services, for river guide services, or for horse trip, pack trip, or back packing guide services. Appellants filed a consent to intervention, and, on May 21, 1986, the district court entered an order granting leave to intervene.

On July 21, 1986, appellees filed a motion seeking an order preliminarily and permanently enjoining appellants from imposing sales tax on the sales price paid for the services described in their complaints. Appellees also moved to consolidate the hearing on the motion for injunction with the trial on the merits. The district court granted the motion to consolidate and set the matter for trial.

Upon consideration of the testimony and other evidence presented, the district court found that the Selective Sales Tax Act of 1937 did not authorize the imposition of sales tax upon the sales price paid for the services set forth in appellees' complaints and, consequently, that the provisions of §§ 44 and 48, Chapter III of the Rules and Regulations of the Wyoming State Tax Commission were null and void. An order permanently enjoining appellants from promulgating, adopting, or enforcing any rule

imposing sales tax on such services was filed September 30, 1986.

I

Appellants claim that appellees lacked standing to challenge the Rules and Regulations of the Wyoming State Tax Commission for the reason that they demonstrated no threatened or actual injury or legally protectable and tangible interest adversely affected by the Rules and Regulations of the Wyoming State Tax Commission. In support of their claim, appellants cite *Stagner v. Wyoming State Tax Commission*, Wyo., 682 P.2d 326 (1984), wherein this Court held that the incident of a tax is on the purchaser, not on the seller. Because appellees are the sellers of the services described above, appellants argue that the incident of the tax is not on them, and consequently they have no legally protectable and tangible interest affording them standing to challenge the Rules and Regulations of the Wyoming State Tax Commission.

■ While it is true that the legal incident of the tax falls on the purchaser, it does not follow that appellees, as sellers, have no legally tangible and protectable right adversely affected by the adoption of §§ 44 and 48 of the Rules and Regulations of the Wyoming State Tax Commission.

The following statutory provisions are relevant:

Section 39–6–407(a), W.S.1977.

"Except as otherwise provided *every vendor* shall collect the tax imposed by this article and *is liable for the entire amount of taxes imposed.*" (Emphasis added.)

Section 39–6–409, W.S.1977.

"(a) * * * If the amount paid exceeds that which is due the excess shall be credited against any subsequent liability of the vendor. *If the amount paid is less than the amount due, the difference together with interest* thereon at the rate of one percent (1%) per month from the time the return was due *shall be paid by the vendor* within ten (10)

days after notice and demand is made by the board.

\*     \*     \*     \*     \*     \*

"(d) *The board may require any vendor to deposit* with it such *security* as it deems sufficient *to cover any tax,* interest or penalty whenever it deems it necessary to insure compliance with the provisions of this article.   * * *

"(e) When the board has reason to believe the collection of any tax, penalty or interest will be jeopardized by delay it shall immediately levy a jeopardy assessment and the amount assessed shall be immediately due and payable. Notice of the assessment shall be given to the vendor personally or by mail. If the jeopardy assessment is not paid within ten (10) days after the service of notice upon the vendor, the deficiency penalty and interest provided in subsection (c) of this section shall attach to the amount of the jeopardy assessment." (Emphasis added.)

Section 39–6–410, W.S.1977.

"(a) Any tax due under this article constitutes a debt to the state from the persons who are parties to the transaction and is a lien from the date due on all the property of those persons. The tax due together with interest, penalties and costs may be collected by appropriate judicial proceedings or the board may seize and sell at public auction so much of the persons' property as will pay all the tax, interest, penalties and costs. * *

\*     \*     \*     \*     \*     \*

"(d) Upon request of the board, *the attorney general may institute proceedings to restrain and enjoin any person from:*

\*     \*     \*     \*     \*     \*

"(ii) *Continuing to act as a vendor if they have not remitted* to the board, when due, *all taxes,* penalty and interest imposed by this article." (Emphasis added.)

Pursuant to these provisions, imposition of the tax in the present case imposes on appellees the legal duty to charge and collect the tax, subjects them to personal lia-

bility for the tax, and allows the State Board of Equalization to enjoin them from doing business if the tax is not paid. There simply is no question that appellees have a legally protectable and tangible interest affording them standing to challenge the Rules and Regulations of the Wyoming State Tax Commission.

## II

■ Appellants also claim that appellees have failed to state a claim for which relief can be granted in that independent actions for declaratory judgment are not available to challenge rules and regulations when there is not otherwise a justiciable controversy between the parties. Appellants acknowledge that declaratory relief is available by independent action notwithstanding a petition for review. *Rocky Mountain Oil and Gas Association v. State*, Wyo., 645 P.2d 1163 (1982). However, appellants argue that such relief is not available here because appellees have not shown a defect in the statutory authority granted by § 39–6–404(a)(viii), W.S.1977, or a legally cognizable right adversely affected by the Rules and Regulations of the Wyoming State Tax Commission.

We already have said that appellees have demonstrated an adverse effect on a legally cognizable right. In addition, in *Rocky Mountain Oil and Gas Association v. State*, 645 P.2d at 1168, we specifically held that declaratory relief is available by independent action notwithstanding any statutory review procedure or time limitations thereon if

"such desired relief concerns *the validity and construction of agency regulations, or* if it concerns *the* constitutionality or *interpretation of a statute* upon which the administrative action is * * * based * * *." (Emphasis added.)

Appellees' challenge is to the validity and construction of the Rules and Regulations of the Wyoming State Tax Commission and the interpretation of the statute upon which they are based. Thus, there is no question that declaratory relief was available to appellees to challenge the Rules and Regulations of the Wyoming State Tax Commission at issue here.

## III

Sections 44 and 48 of the Rules and Regulations of the Wyoming State Tax Commission were promulgated pursuant to the rulemaking power granted to the State Tax Commission in § 39–1–303(a)(viii), W.S. 1977, and were intended to expand upon § 39–6–404(a)(viii), which provides in relevant part:

"(a) Except as provided by W.S. 39–6–405, there is levied and shall be paid by the purchaser on all sales of twenty-five cents ($.25) or more an excise tax of three percent (3%) upon:

\*    \*    \*    \*    \*    \*

"(viii) The sales price paid for each admission to any place of amusement, entertainment, recreation, games or athletic event."

The question we must decide is whether § 39–6–404(a)(viii) gives appellants the authority to tax the services under consideration here. Appellants argue that § 39–6–404(a)(viii) is clear and unambiguous, that ski lift ticket charges and charges for the other services in question are clearly subject to the admission section of the sales tax law, and consequently that this Court should uphold the Rules and Regulations of the Wyoming State Tax Commission. Appellees, on the other hand, argue that § 39–6–404(a)(viii) is ambiguous, that it does not clearly apply to ski lift ticket services and the other services at issue here, and consequently that the Rules and Regulations of the Wyoming State Tax Commission must be declared null and void.

■ If possible, when construing a statute, words must be given their plain and ordinary meaning. *Commercial Union Insurance Company v. Stamper*, Wyo., 732 P.2d 534 (1987); *Scadden v. State*, Wyo., 732 P.2d 1036 (1987). The plain and ordinary meaning of the word "admission" is: "fee paid at or for entering." Webster's Third New International Dictionary, Unabridged, at 28 (1971). In the present case, the record demonstrates that appellees Big Valley Corporation and Jackson Hole Ski Corporation do not charge a fee or

a price for entry into the ski areas. The public is admitted into those areas without charge and, in fact, appellees Big Valley Corporation and Jackson Hole Ski Corporation are prohibited by the United States Forest Service from charging members of the public to enter. Alan Silker, a forester for the United States Forest Service, testified as follows:

"Q. Under forest service policy, can the ski corporation as a permittee charge members of the public to enter onto the ski corporation permit areas[?]

"A. No.

"Q. Are you generally familiar with the ski corporation mountain operation policies?

"A. Yes.

"Q. How are you familiar with those policies?

"A. We work with those policies twice a year as we review mountain operation plans under the terms of the special use permit.

"Q. Do you know whether the ski corporation mountain operation policy includes a charge for entering onto the ski area?

"A. Yes, I do.

"Q. Does it?

"A. No.

"Q. Does the ski corporation mountain operation policy exclude members of the public who do not have lift tickets from the ski area?

"A. No.

"Q. If a person's on the ski area in compliance with the ski corporation's mountain operation policies, but without a ski lift ticket, does the ski area policy exclude those people?

"A. No.

\*    \*    \*    \*    \*    \*

"THE COURT: * * * Would the forest service allow the ski corporation to keep people off because [they] didn't have a ticket?

"A. No.

\*    \*    \*    \*    \*    \*

"Q. Does the forest service policy allow the ski corporation to charge an entry fee to the ski area?

"A. No."

The record also demonstrates that the sales price paid for the various guiding services at issue in this case is not a price charged for entrance within the plain and ordinary meaning of the word "admission." Silker further testified:

"Q. In your capacity as a forester, are you familiar with the forest service outfitter-guide special use permits?

"A. Yes.

"Q. Do you administer special use permits for float trips in the district?

"A. Yes.

"Q. Do these permits allow the holder exclusive use of any area of the national forest?

"A. No.

"Q. Can any member of the public float down the same rivers as a permittee without paying for a river guide?

"A. Yes.

"Q. * * * For what purposes can a float trip permittee charge members of the public under terms of their permit?

"A. For the use of boats, other equipment, and for the guides to accommodate the trip.

\*    \*    \*    \*    \*    \*

"Q. Are you familiar, in your capacity as a forester, with forest service hunting guide special use permits?

"A. Yes.

"Q. Does a special use permit for a hunting camp allow exclusive use of that camp site?

"A. No, it does not.

"Q. Can a member of—can a permittee keep a member of the public from coming through the camp site?

"A. No.

"Q. Can he charge them to come through?

"A. No.

"Q. Do you also administer pack trips special use permits?

"A. Yes.

"Q. * * * Does forest service policy allow the permittee of [a] pack trip permit exclusive use of any area?

"A. No.

"Q. Does forest service policy allow a pack trip or horse trip permittee to charge for entrance to any place?

"A. No."

As this testimony demonstrates, the public may enter the national parks or forests at any time without paying an entrance fee to any appellee involved in this case. When a member of the public does pay a fee to Triangle X Ranch or any other outfitter or dude ranch, the fee is clearly for the skill, direction, and services provided by the guide, not for admission to the park or forest.

It is elementary that taxation is a legislative function and that taxes may be imposed only pursuant to and in accordance with statutory authority. *City of Rawlins v. Frontier Refining Company*, Wyo., 396 P.2d 740 (1964). The power of the State Tax Commission exists only by virtue of statutes empowering it to act and can be exercised only within the express authority conferred. *Kelsey v. Taft*, 72 Wyo. 210, 263 P.2d 135 (1953). Because we find nothing in § 39–6–404(a)(viii) expressly authorizing the State Tax Commission to tax the sales price paid for the services described in appellees' complaints, we affirm the district court's order declaring §§ 44 and 48 of the Rules and Regulations of the Wyoming State Tax Commission null and void.[1]

Having concluded that appellants simply do not have the authority to impose sales tax on the services in question, we find it unnecessary to consider whether appellants are estopped from imposing such taxes by their prior inconsistent interpretations of § 39–6–404(a)(viii).

The judgment of the district court declaring §§ 44 and 48 of the Rules and Regulations of the Wyoming State Tax Commission null and void and enjoining appellants from promulgating, adopting, or enforcing any rule imposing sales tax on the services in question is affirmed.

URBIGKIT, J., filed an opinion concurring in part and dissenting in part.

URBIGKIT, Justice, concurring in part and dissenting in part.

I concur generally in the opinion of the court and the result achieved, except as to the ski-lift tickets, which I would hold to be properly taxable under the sales tax statutes, § 39–6–404(a)(viii), W.S.1977 (admissions), and § 39–6–404(a)(iv), W.S.1977 (intrastate transportation). The compensation paid is to obtain admission to the privately owned tram to be transported up the mountain as a recreational activity. A logical differentiation from spectator sports, basketball or football, or participative sports such as skating, is not perceived.

Consequently, to the extent now presented by this case,[1] and as my only difference with the court, I would confirm the efficacy of the State Board of Equalization regulation to tax the sale of ski-lift tickets, under the Wyoming Sales Tax Act.

1. The effect of our holding is limited. In an apparent attempt to remedy appellants' misinterpretation of the Selective Sales Tax Act of 1937, the Forty-Ninth Legislature added a new paragraph to § 39–6–405(a), W.S.1977, which exempts from taxation under the act any amounts paid for recreational services, including the temporary use of recreational equipment. The services under consideration in the present case are clearly recreational services. Therefore, regardless of our holding, the sales price paid for those services would not be subject to taxation as of July 1, 1987, the effective date of the new provision.

1. This writer has bespoken in times past that the continued progression of situational exemptions as regularly applied by the legislature to the sales tax will achieve a result that the law may some day only apply to an elderly pensioner living alone in either Burns or Kelly, Wyoming. The exclusionary nibbling process of exemptions to the sales tax is a legislative consuetude that this court is not justified in assisting any more than is required by specific statutory provision.