STATE of Wyoming; DEPARTMENT OF REVENUE AND TAXATION; and State Board of Equalization, Appellants (Defendants),

v.

PACIFICORP, d/b/a Pacific Power and Light Company and Utah Power Company; and Idaho Power Company, and Basin Electric Power Cooperative, in its own behalf, and as operating agent in behalf of Tri–State Generation and Transmission Association, Inc.; Western Minnesota Municipal Power Agency; City of Lincoln, Nebraska; Heartland Consumers Power District; and the Wyoming Municipal Power Agency, Appellees (Plaintiffs).

No. 93–134.

Supreme Court of Wyoming.

April 15, 1994.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellants.

Rex E. Johnson of Sherard, Sherard & Johnson, Wheatland, and Stanley K. Hathaway of Hathaway, Speight, Kunz & Trautwein, Cheyenne, for appellees.

Peter C. Maxfield, Laramie, for amici curiae Carbon, Lincoln, Sublette, Sweetwater, and Uinta Counties.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellants State of Wyoming, Department of Revenue and Taxation, and State Board of Equalization (the State) appeal from the order granting a summary judgment in favor of Appellees Pacificorp, Idaho Power Company, and Basin Electric Power Cooperative (the taxpayers).

We affirm in part and reverse in part.

The State raises the following issues on appeal:

Are the rules and regulations concerning ad valorem tax exemption for pollution control equipment beyond the board's statutory authority:

(1) Because they incorporate the requirement that the property be required by state or federal pollution control authorities?

(2) Because they require allocation of the exemption for equipment that serves other beneficial purposes or use and eliminate exemption if the property does not eliminate, control or prevent pollution?

(3) Because they incorporate the requirement that machinery be treated by the company as an owned asset, i.e., capitalized, prior to exemption?

The taxpayers owned interests in certain power plants located in Wyoming. In June of 1992, the taxpayers filed two complaints in the district court against the State. Pacificorp and Idaho Power Company filed a complaint seeking a declaratory judgment. Basin Electric Power Cooperative filed a similar complaint seeking a declaratory judgment which also requested injunctive relief.

Both complaints challenged the rules which had been promulgated by the State

pertaining to the ad valorem tax exemption for pollution control property, claiming that the State exceeded its statutory authority when it promulgated the rules. The challenged rules went into effect on February 26, 1992. The taxpayers alleged that the State had granted the ad valorem tax exemption to them in previous years on certain pollution control property but that, under the new regulations, the State denied the exemption as to specific property.

The district court consolidated the two cases on November 9, 1992. On January 28, 1993, the taxpayers filed a motion for a summary judgment. Soon thereafter, the State filed a motion to dismiss the taxpayers' complaints. After holding a hearing on the parties' motions, the district court granted a summary judgment in favor of the taxpayers, holding that certain provisions of the rules were invalid, and denied the State's motion to dismiss. This appeal followed.

Property which is "used for pollution control to the extent provided by W.S. 35–11–1103" is exempt from property taxation. WYO.STAT. § 39–1–201(a)(xx) (Supp.1993). WYO.STAT. § 35–11–1103 (Supp.1993) provides:

> The following property is exempt from ad valorem taxation pursuant to the provisions of this act and includes facilities, installations, machinery or equipment attached or unattached to real property and designed, installed and utilized primarily for the elimination, control or prevention of air, water or land pollution, or in the event such facility, installation, equipment or machinery shall also serve other beneficial purposes and use, such portion of the assessed valuation thereof as may be reasonably calculated to be necessary for and devoted to elimination, control or prevention of air, water and land pollution. The department of revenue shall determine the exempt portion on all property assessed pursuant to W.S. 39–2–201 through 39–2–213. The county assessor shall determine the exempt portion on all property assessed pursuant to W.S. 39–2–301 through

> 39–2–304. The determination shall not include as exempt any portion of any facilities which have value as the specific source of marketable byproducts.

The State promulgated regulations in 1992 to further define property which was exempt under the statute. The portions of those regulations which are relevant to this appeal were:

> Section 9. *Pollution control property—W.S. 39–1–201(a)(xx) and 35–11–1103.*
>
> . . . .
>
> (b) "Property necessary for and devoted to elimination, control or prevention of air, water and land pollution" or "pollution control property" means facilities, installations, capitalized machinery or equipment required by the Wyoming Department of Environmental Quality or federal environmental protection agencies by permit, license or legal requirement and which are primarily used for the elimination, control or prevention of air, water or land pollution . . .:
>
> . . . .
>
> (iv) This phrase does not include equipment or areas associated with protection of stock, wildlife or habitat, prevention of noise pollution, operation of landfills other than measures to protect water quality, worker safety measures, or water or septic systems operated for employee benefit. This phrase also does not include pollution monitoring devices which merely detect the presence of pollution unless such devices are an integral part of pollution control equipment and they automatically activate or deactivate equipment which eliminates, controls or prevents pollution.
>
> (v) The presence of a permit or license condition or legal requirement by federal environmental protection agencies or the Wyoming Department of Environmental Quality does not, by itself, qualify equipment or areas as exempt.

RULES AND REGULATIONS, WYOMING STATE BOARD OF EQUALIZATION ch. XXX, § 9(b) (1992).[1]

---

1. These rules were amended effective April 20, 1993, and all the language which is contested in this case was removed.

The district court's order declared that the following provisions in Chapter XXX, Section 9 of the rules were unlawful and void because the State exceeded its statutory authority when it promulgated them:

 a. The following language in Section (b):

 1. "capitalized machinery"

 2. "or equipment required by the Wyoming Department of Environmental Quality or federal environmental protection agencies by permit, license or legal requirement"

 b. All of Section (b)(iv) and (v).[2]

"[A]n agency enjoys only those powers which the legislature has expressly conferred." *Jackson v. State ex rel. Wyoming Workers' Compensation Division,* 786 P.2d 874, 878 (Wyo.1990). *See also State Board of Equalization v. Jackson Hole Ski Corporation,* 737 P.2d 350, 356, *on reh'g,* 745 P.2d 58 (Wyo.1987). An administrative agency may not exceed the authority expressly delegated to it by the Legislature when the agency is promulgating regulations.

The Legislature granted general rule-making powers to the State Board of Equalization in WYO.STAT. § 39–1–304(a)(xxvii) (Supp. 1993). The rules and regulations promulgated by the State Board of Equalization must be "necessary to the enforcement of the provisions of any or all tax and other revenue measures which are administered by the department and the board." Section 39–1–304(a)(xxvii).

In order to determine whether the agency acted within its statutory limits, we must interpret the relevant statute. We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all

parts of the statute *in pari materia.* 845 P.2d at 1042.

A statute may be ambiguous or clear. 845 P.2d at 1043. It is unambiguous "if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. v. Wyoming State Board of Equalization,* 813 P.2d 214, 220 (Wyo.1991). A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20. The task of determining whether a statute is clear or whether it is ambiguous is assigned to the court, and the court makes the determination as a matter of law. If the court determines that a statute is clear and unambiguous, it gives effect to the plain language of the statute and does not resort to rules of statutory construction. *Parker Land and Cattle Company,* 845 P.2d at 1043. *See also Thunder Basin Coal Company v. Study,* 866 P.2d 1288 (Wyo.1994).

Section 9(b) defined the terms " '[p]roperty necessary for and devoted to elimination, control or prevention of air, water and land pollution' " or " 'pollution control property' " as being "facilities, installations, capitalized machinery or equipment required by the Wyoming Department of Environmental Quality or federal environmental protection agencies by permit, license or legal requirement and which are primarily used for the elimination, control or prevention of air, water or land pollution." The district court declared that the provisions in Section 9(b) were invalid insofar as they exempted only property which was required by the Department of Environmental Quality or federal environmental protection agencies by permit, license, or legal requirement.

The State argues that the district court was incorrect because § 35–11–1103 provided authorization for the rule. Specifically, the State argues that the language in the statute which stated that "[t]he following property is exempt from ad valorem taxation *pursuant to the provisions of this act*" (emphasis added) supported the limitation of the ex-

---

**2.** The State did not specifically argue that the district court's rulings regarding the first sentence of Section 9(b)(iv) and all of Section 9(b)(v) were incorrect.

emption to pollution control property required by the relevant agencies. The State argues that the statute "only exempt[ed] property that [was] installed for the purpose of meeting the legal requirements of the Wyoming Environmental Quality Act and related federal environmental protection agencies." The State concludes that, because the Act included provisions concerning permitting and licensing by the Department of Environmental Quality, only property which was required by the Department of Environmental Quality or the relevant federal agencies could be exempt.[3]

WYO.STAT. § 35–11–103(a)(xiii) (Supp.1993) defines "this act" as being a list of statutory provisions located in Title 35, Chapter 11 of the Wyoming statutes.[4] Those provisions generally refer to the Wyoming Environmental Quality Act which includes laws pertaining to environmental quality within the state and the process of administering such laws.

The statutory language in § 35–11–1103 was clear and unambiguous as it pertained to this case.[5] The plain language of the statute did not expressly limit the exemption to property which was required by the Department of Environmental Quality or federal environmental protection agencies. Instead, it exempted property which was "designed, installed and utilized primarily for the elimination, control or prevention" of pollution. The "pursuant to the provisions of this act" language in the statute referred back to and modified the phrase "exempt from ad valorem taxation." By including the language "pursuant to the provisions of this act," the Legislature expressly defined the property which was subject to the ad valorem tax exemption articulated in § 35–11–1103 as being property having to do with environmental quality and distinguished that property from

other types of property which were exempt from ad valorem taxation. *See* WYO.STAT. § 39–1–201 (Supp.1993) (listing the many and varied property tax exemptions available in Wyoming). The Legislature did not limit the exemption to property required by the Department of Environmental Quality or federal environmental protection agencies.

The State also argues: "It is reasonable to assert that the legislature only intended to exempt pollution control property if and only if it satisfied the standards for pollution control provided by the Wyoming Environmental Quality Act." The State's interpretation is inconsistent with our decision in *State Board of Equalization v. Tenneco Oil Company*, 694 P.2d 97 (Wyo.1985). The purpose of the tax exemption articulated in § 35–11–1103 is

> to provide a tax incentive that would encourage the design, installation and utilization of pollution control equipment and devices for the beneficial public purpose of reducing or eliminating environmental pollution to the extent practical.

694 P.2d at 100, *quoted in General Chemical Corporation v. Wyoming State Board of Equalization*, 819 P.2d 418, 422 (Wyo.1991).

If the exemption were allowed for only equipment which was required by the Department of Environmental Quality or federal environmental protection agencies, the exemption would not encourage the installation, et cetera, of property which would eliminate "environmental pollution to the extent practical." 694 P.2d at 100. In other words, no incentive would exist for polluters to install pollution control property beyond the bare legal requirements, and the statute's policy would not be fulfilled. *See also* WYO.STAT. § 35–11–102 (1988) (defining the policy and

---

**3.** At the hearing in the district court, the State conceded that the rule went beyond the statutory language "in the sense it [did] allow for an exemption that [was] required by EPA as opposed to the DEQ."

**4.** Section 35–11–103(a)(xiii) states:
(a) For the purpose of this act, unless the context otherwise requires:
. . . ;
(xiii) "This act" means W.S. 35–11–101 through 35–11–403, 35–11–405, 35–11–406,

35–11–408 through 35–11–1104 and 35–11–1414 through 35–11–1428.

**5.** In an effort to promote its interpretation of the statute, the State would have us look to the statutory evolution of § 35–11–1103. Since the current statute is clear on its face with regard to the issue before us, we do not look to extrinsic materials to ascertain the meaning of the statute. *Parker Land and Cattle Company*, 845 P.2d at 1043.

purpose of the Wyoming Environmental Quality Act). The district court correctly ruled that the relevant portion of Section 9(b) was unlawful and void.

The district court ruled that the term "capitalized machinery" in Section 9(b) was invalid because it exceeded the statutory provisions.[6] The State argued to the district court and to this Court that the taxpayers did not present a justiciable controversy regarding the "capitalized machinery" language.

■ We have stated that a declaratory judgment action "is a proper cause of action in which to assert that . . . a rule exceeds the [agency's] statutory authority:" *BHP Petroleum Company, Inc. v. Wyoming Tax Commission*, 766 P.2d 1162, 1165, *after remand*, 784 P.2d 621 (Wyo.1989) (citing *Jackson Hole Ski Corporation*, 737 P.2d at 354). However, the Uniform Declaratory Judgments Act does not expand a court's jurisdiction; a justiciable controversy must exist before a court may grant declaratory relief. *Reiman Corporation v. City of Cheyenne*, 838 P.2d 1182, 1185–86 (Wyo.1992), *after remand*, 869 P.2d 125 (Wyo.1994); *West Texas Utilities Co. v. Exxon Coal USA, Inc.*, 807 P.2d 932, 938 (Wyo.1991).

■ "A justiciable controversy is defined generically as a controversy fit for judicial resolution." *Reiman Corporation*, 838 P.2d at 1186. A court should review only those portions of a challenged law for which a justiciable controversy exists. *See generally Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), *rev'g* 449 F.Supp. 449 (D.Ariz.1978) (the United States Supreme Court determined whether a justiciable controversy existed as to the separate provisions of Arizona's farm labor statute). In *Reiman Corporation*, the Court succinctly reiterated the requirements which are necessary to establish a justiciable controversy under the Uniform Declaratory Judgments Act:

1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

838 P.2d at 1186 (citing *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974)).

In this case, the State established by affidavit that in 1992, the year at issue, the taxpayers requested exemptions for only property which had actually been capitalized. The State also averred that "none of the [requested] exemptions that were disallowed by the [State] were based on whether or not the particular item was capitalized."

In their brief, the taxpayers concede that "the issue of 'capitalized machinery and equipment' was not the subject of a direct dispute in the 1992 valuation determination." However, the taxpayers argue: "[T]he threat of harm and improper taxation [was] present and real." The taxpayers assert that they did not capitalize property until "it [was] installed and in operation." In essence, they argue that a justiciable controversy existed because they may apply in the future for the exemption for uncapitalized property, as defined by their accounting method, and the State may deny the request.

---

**6.** The district court probably erred when it included the word "machinery" in the ruling. The parties' controversy was over the capitalization requirement alone. Machinery was simply a part of the list of types of exempt property used in the regulation which mirrored the statutory language. Section 35–11–1103. Because of the decision we render today, however, we do not need to decide whether the district court properly included the word "machinery" in its ruling.

 The district court erred in ruling on the validity of the "capitalized machinery" language because no justiciable controversy existed. In order to establish that a justiciable controversy exists, a plaintiff must have "a tangible and legally protectible interest at stake in the litigation; his interest must be injured or threatened with injury by the administrative action of which he complains." *Memorial Hospital of Laramie County v. Department of Revenue and Taxation of State of Wyoming,* 770 P.2d 223, 226 (Wyo. 1989), *after remand,* 805 P.2d 276 (Wyo. 1991). *See also Jackson Hole Ski Corporation,* 737 P.2d at 353–54. "[T]he Declaratory Judgment[s] Act gives the courts no power to determine future rights or anticipated disputes or controversies." *White v. Board of Land Commissioners,* 595 P.2d 76, 79 (Wyo. 1979). *See also Langdon v. Aetna Life Insurance Company,* 640 P.2d 1092, 1099 (Wyo. 1982). The taxpayers contend that the threat of harm and improper taxation was present and real. We disagree.

The taxpayers did not present any evidence which indicated that their interests had actually been injured or that an imminent threat of such an injury existed. If we were to rule on the validity of the "capitalized machinery" language, our ruling would not effectively operate to terminate an actual controversy.

The taxpayers rely on *Memorial Hospital of Laramie County* as authority for their argument that a justiciable controversy existed in this case. In *Memorial Hospital of Laramie County,* the controversy centered around the sales and use taxation of materials which were used in the construction of an addition to a hospital. The Department of Revenue and Taxation notified a subcontractor who supplied materials "through a direct contract with the hospital while providing labor relating to those materials through a separate labor subcontract with [the construction manager]" that the materials were subject to taxation. 770 P.2d at 225. The hospital filed a claim for declaratory and injunctive relief, alleging that its tax-exempt status precluded taxation of the materials. *Id.* It also paid, under protest, the taxes which were assessed against the subcontractor. Although the hospital may not have been immediately obligated to pay the tax, the Court held that a justiciable controversy existed because "the injury [was] sufficiently imminent as to warrant judicial consideration." 770 P.2d at 227.

The *Memorial Hospital of Laramie County* situation is different from the situation in the case at bar. In that case, the Department of Revenue and Taxation had already notified the subcontractor that the materials were subject to taxation. Even if, as the Court suggested, the hospital may not have been immediately obligated to pay the tax, the parties had taken certain material steps which presented a real and imminent threat to the hospital's interest.

In this case, the State had neither made nor threatened to make a demand for payment of a tax on uncapitalized property. In fact, the taxpayers concede that the "capitalized machinery" language "was not the subject of a direct dispute in the 1992 valuation determination." The threat was not real at that point.[7]

This case did not present a matter of great public interest or importance and, therefore, did not warrant relaxation of the justiciability requirement. This Court stated in *Brimmer* that the great public interest or importance exception to the justiciability requirement "must be applied with caution and its exercise must be a matter where strict standards are applied." 521 P.2d at 578. Since an exemption for uncapitalized property was not requested or denied, our refusal to entertain this action will not put the taxed entities or the public coffers at risk. *See generally Langdon,* 640 P.2d at 1099–1100.

 The district court also declared that Section 9(b)(iv) was invalid because it was beyond the statutory provisions. The State argues that the district court's ruling as to the last sentence of Section 9(b)(iv) was incorrect. That provision excluded monitoring

7. The "capitalized" language was removed from the rules when they were amended in 1993. *See* *supra* note 1.

devices from the exemption unless "such devices [were] an integral part of pollution control equipment and they automatically activate[d] or deactivate[d] equipment that eliminate[d], control[led] or prevent[ed] pollution." Section 9(b)(iv).

Section 35–11–1103 did not specifically address whether monitoring devices were included within the ad valorem tax exemption. However, the statute did state that property which was "designed, installed and utilized primarily for the elimination, control or prevention" of pollution was exempt.

The State contends that monitoring devices were property which "serve[d] other beneficial purposes and use" and that, according to the statute, only "such portion of the assessed valuation thereof as may be reasonably calculated to be necessary for and devoted to elimination, control or prevention" of pollution was exempt. Section 35–11–1103. The State asserts that monitoring devices served the other beneficial purpose of warning workers of danger but that they did not eliminate, control, or prevent pollution.

Under the plain and ordinary meaning of the statutory language, monitoring devices fit squarely within the ad valorem tax exemption. Section 35–11–1103. Specifically, monitoring devices control pollution. "Control" is defined as "to check, test, or verify by counter or parallel evidence or experiments." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (1961). This is exactly what monitoring devices do. "Monitor" is defined as "to watch, observe, or check" and "to keep track of, regulate, or control (as a process or the operation of a machine)." *Id.* at 1460. A monitoring device is an integral part of a pollution control system. Without having a means to measure the efficiency of other pollution control facilities or to test for the presence of pollution, it would be impossible to eliminate, control, or prevent pollution.

The rule which excluded monitoring devices from the tax exemption was invalid because it directly contradicted the plain wording of the statute.

Finally, the State asserts in summary fashion that the controversy over monitoring devices concerned the rule's application rather than its validity. The State, therefore, concludes that the taxpayers should have been required to exhaust their administrative remedies before they were allowed to obtain judicial review.

� ▬▬ The only issue presented to us on appeal is the legal question of whether the State's rules were adopted pursuant to statutory authority.[8] A party can challenge the validity of an agency's rule through a declaratory judgment action without first exhausting his administrative remedies. *Rocky Mountain Oil and Gas Association v. State,* 645 P.2d 1163, 1168 (Wyo.1982). The declaratory judgment action was proper.

In summary, we affirm the district court's holding that the State exceeded its statutory authority by adopting a rule which allowed the ad valorem tax exemption for only property which was required by the state or federal environmental protection agencies and by adopting a rule which did not allow the exemption for monitoring devices. We reverse the district court's ruling on the validity of the regulatory language pertaining to "capitalized machinery" because no justiciable controversy existed.

Affirmed in part and reversed in part.

---

**8.** In their complaints and the motion for a summary judgment, the taxpayers sought the following relief: (1) a declaration on the validity of the rules; (2) an order directing the State to adjust the assessed value of their pollution control property in accordance with the law; and (3) a refund of the amount of the disputed tax they paid under protest. The district court held that it would decide only the legal question of whether the rules were beyond the statutory language. The taxpayers agreed to this limitation on the district court's ruling. We, therefore, follow the district court's lead and offer no decisions as to whether certain property would be entitled to the exemption or whether a refund would be necessary. *See generally State Board of Equalization v. Jackson Hole Ski Corporation,* 745 P.2d 58 (Wyo. 1987).