**GENERAL CHEMICAL CORPORATION, Appellant (Petitioner),**

v.

**WYOMING STATE BOARD OF EQUALIZATION, Appellee (Respondent).**

No. 91–46.

Supreme Court of Wyoming.

Oct. 28, 1991.

Robert H. Johnson, Rock Springs, for appellant. Argument presented by Mr. Johnson.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Matthew D.C.P. Meuli (argued), Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant General Chemical Corporation challenges an order of the State Board of Equalization setting the amount of exemption from 1989 ad valorem tax attributable to pollution control equipment at appellant's facility. Appellant filed a petition for review of the Board's order in the district court. The district court certified the case to this court for determination pursuant to W.R.A.P. 12.09.

We affirm the order of the State Board of Equalization.

Appellant mounts several procedural and substantive challenges to the State Board's determination. We believe the substantive issues can be boiled down to the single, basic issue stated by appellee:

"Did the Wyoming State Board of Equalization correctly interpret W.S. 35–11–1103 by not considering operating costs in determining the amount of value of the pollution control equipment for ad valorem taxation?"

We also consider the procedural issue urged by appellant:

"In determining the tax exemption of pollution control equipment, must the State Board of Equalization consider the recommendation of the county assessor, as provided in its own rules?"

On January 13, 1989, General Chemical Corporation submitted an application to the Sweetwater County Assessor for ad valorem tax exemption. The exemption was sought for pollution control equipment at General Chemical's facility near Green River, Wyoming having a total installed cost of $38,166,770. The county assessor, by regulation, reviewed the application before making a recommendation to the State Board of Equalization through the Director of the Ad Valorem Tax Division (Division).

The county assessor recommended an exemption of $32,404,448. Robert E. Williams, the Supervisor of Local Assessments for the Division, reviewed the assessor's recommendation and recommended reduction, and the State Board of Equalization reduced the total exemption to $26,-122,938. Part of this reduction was due to a difference in how Williams calculated the non-exempt portion of the equipment's valuation attributable to production of trona dust and other marketable by-products. The county assessor had used the *net* income from operation of the pollution control equipment to arrive at the capitalized value of the income stream from sale of marketable by-product. Williams used the *gross* income from sale of the by-product to make his calculation.

The difference produced by these methodologies is striking because, in nearly every case, the cost of operating the pollution control machinery far exceeds the value recovered from sale of by-products. For example, the 5,718 tons of trona dust collected annually by the "Calciner Dust Control GR–2" had a market value of $97,206. However, the annual operation, maintenance and power requirements of that unit totalled $269,001. The county assessor recommended a 100% exemption, or $1,304,-995, for the calciner; the State Board reduced this, due to the capitalized gross value of the trona, to 53%, or $691,647. Other components of pollution control machinery were similarly re-evaluated, leading to the State Board's recommended exemption of $26,122,938.

General Chemical filed an internal appeal from the Board's determination. The parties agreed to submit the matter to the Board on written briefs. On December 3, 1990, the Board issued findings of fact, conclusions of law and an order. It found that the Board's method of calculating value of the pollution control equipment as a source of marketable by-product was correct and that the Board acted reasonably by not allowing a deduction for the equipment's current operating expenses.

General Chemical appealed the Board's determination to the district court. The district court then certified the appeal to this court pursuant to W.R.A.P. 12.09.

■ Appellant contests the Board's failure to consider the costs of operation of its pollution control equipment when determining the amount of exemption which should be allowed. We review the Board's action in light of the following well-established principles:

"We review the decision of an administrative agency as if we were a reviewing court of the first instance [which in this case we are]; petitioners have the burden of proving that the agency's actions are arbitrary, capricious or an abuse of discretion; the reviewing court must examine whether the decision made by an administrative agency has been reached on relevant factors and was rational; agency decisions are to be reversed only for errors of law; and courts will not substitute their judgment for that of an administrative agency." *McGuire v. State, Dept. of Revenue and Taxation*, 809 P.2d 271, 274 (Wyo.1991).

The relevant statutory authorization in force at the time the State Board made its determination reads as follows:

"The following property is exempt from ad valorem taxation pursuant to the provisions of this act and includes facilities, installations, machinery or equipment attached or unattached to real property and designed, installed and utilized primarily for the elimination, control or prevention of air, water or land pollution, or in the event such facility, installation, equipment or machinery shall also serve other beneficial purposes and use, such portion of the assessed valuation thereof as may be reasonably calculated to be necessary for and devoted to elimination, control or prevention of air, water and land pollution. The state board of equalization shall determine such exempt portion, *and shall not include as exempt any portion of any facilities which have value as the specific source of marketable byproducts.*" W.S. 35–11–1103 (June 1988 Repl.). (emphasis added)

The parties urge differing interpretations of this statute. Appellant claims that it requires consideration of net value of the marketable by-products, while appellee insists that we follow the pre–1990 agency interpretation in allowing only gross value. In *Allied–Signal, Inc. v. State Board of Equalization*, 813 P.2d 214 (Wyo.1991), we summarized our rules for construction of statutes as follows:

"[T]his court looks only to the intent of the legislature when enforcing or construing statutes. * * *

"Legislative intent must be ascertained initially and primarily from the words used in the statute. * * * If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. * * *

"We previously have articulated the proposition that a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. The converse of this proposition is that the statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. The question of whether an ambiguity exists in a statute is a matter of law to be determined by the court." *Allied–Signal*, 813 P.2d at 219–20. (citations omitted)

■ The Board argues that W.S. 35–11–1103 is unambiguous and that its plain language supports the agency interpreta-

tion. The plain language of this statute, however, says nothing about whether gross or net value is to be used for purposes of valuation. Appellant, in arguing for ambiguity, notes that the Board changed its interpretation of the pertinent portion of the statute by published guidelines during the pendency of this litigation. This may certainly be additional evidence of ambiguity, but it does not create the ambiguity. *See State Board of Equalization v. Tenneco Oil Co.*, 694 P.2d 97, 99 (Wyo.1985) (agency's later different interpretation of statute as evidence of ambiguity); *see also Allied–Signal*, 813 P.2d 214 (changing agency interpretation of statute alone not conclusive evidence of ambiguity; court retains ultimate power to determine ambiguity; agency interpretation cannot be used to render an unambiguous statute ambiguous).

■ Appellant argues, and we agree, that it is not the value of the marketable by-product itself which is denied exemption, but rather the value of the equipment *as a source of the by-product*. Since no by-product can be produced without incurring operational expenses, appellant reasons, the value of the equipment "as a source" of by-product cannot be properly calculated unless necessary operational expenses are factored into the equation. We think appellant reads more into the statute than is actually there. The language certainly suggests that the value of by-product is relevant in determining the value of the non-exempt portion of the facility. However, the statute itself does not give us a formula for arriving at the actual valuation. We think the statute is silent on the method of evaluation and thus ambiguous. Therefore, since we cannot discern the legislative intent on this question from the plain language of the statute, we must make additional inquiry as to its proper interpretation.

W.S. 39–1–304(a)(iv) (July 1990 Repl.), gives the State Board of Equalization the power to

"[d]ecide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes, in accordance with the advice and opinion of the attorney general, whose opinion and the rules, regulations, orders and instructions prescribed by the board are binding until reversed, annulled or modified by a court of competent jurisdiction.[1]"

Appellant points us to Chapter XXII, § 6(g) of the Rules and Regulations of the Wyoming State Tax Commission dealing with ad valorem tax valuation methodology and assessment, which provides:

"(g) *The Income or Capitalized Earnings Approach.* The income or capitalized earnings approach is a method of estimating the value of property by converting anticipated benefits to be derived from the ownership of the property into a value estimate as is reflected or accomplished by yield capitalization methodology. *These benefits can be reflected through the net operating income or cash flow of a company.* * * *

"(i) For the purposes of this subsection, cash flow is the difference between dollars paid and dollars received. Dollars received include all revenues generated from operating assets. Dollars paid include *all current expenses and capital expenditures, or annual allowances therefor, required to develop and maintain the income stream.*" (emphasis added)

■ This regulation is contained in a general provision dealing with valuation for purposes of ad valorem taxation. The appraisal method in § 6(g) uses the net operating income or cash flow *of a company* to properly calculate its appraised value. Where this method is used, however, to measure the value of the productive proportion of pollution control equipment, a distortion of value occurs because the entire cost of operating the pollution control machinery is offset against the incidental gains received from the marketable by-product. If there were no marketable by-

---

1. The 1991 amendment to this statute deleted the references to attorney general opinions and to judicial review. 1991 Wyo. Sess. Laws ch. 115, § 1.

product at all, the operating expenses attributable to the pollution control would be irrelevant—simply borne by the company. Since the legislature did not provide for reimbursement for the operating expenses of pollution control equipment, we think that use of this regulation in this way violates the statutory purpose.

The method Williams used to arrive at the result, approved by the Board, is a valuation formula established by agency guidelines. The 1989 guidelines state as follows:

"Those completed applications where the pollution control facility reflects a marketable by-product, the company must supply the annual volume of materials recovered and a unit value for the product or material at the point of recovery. The annual volume of product or materials recovered multiplied by the unit value will approximate annual income. Annual income divided by an appropriate capitalization rate will represent the 'current income value' of the pollution control facility based on the product recovered. The 'current income value' arrived at based on product recovered must then be compared to the 'current cost replacement value' of the subject facility as determined by the 'trended historic cost method.' The 'trended historic cost method' takes the original installed costs multiplied by a trending factor, based on year of acquisition, to equal current replacement cost new or RCN. RCN less allowances for physical, functional or economic depreciations will give the 'current cost replacement value.' If the 'current cost replacement value' is greater than the 'current income value' then the difference between the two values would be exempt or can be used to determine the percentage exempt. If the 'current income value' is equal to or greater than the 'current cost replacement value' then there is no exemption."

We must decide whether the Board's interpretation, as expressed in the guidelines, reflects the intent and purpose of the legislature. *McGuire*, 809 P.2d at 274. The construction placed on a statute by the agency charged with its execution is entitled to deference. *Stratman v. Admiral Beverage Corp.*, 760 P.2d 974, 986 (Wyo.1988); *WYMO Fuels, Inc. v. Edwards*, 723 P.2d 1230, 1237 (Wyo.1986).

In *Tenneco*, 694 P.2d at 100, we discussed the purpose of W.S. 35–11–1103:

"This exemption was obviously intended to provide a tax incentive that would encourage the design, installation and utilization of pollution control equipment and devices for the beneficial public purpose of reducing or eliminating environmental pollution to the extent practical."

However, the legislature reduced this incentive exemption by the value of the equipment attributable to recovery of marketable by-product. We think the legislature took this action to avoid the windfall which would accrue to the owners of such equipment if they were allowed full deduction plus the value of materials recovered by the control equipment. *See Meijer, Inc. v. State Tax Commission*, 66 Mich.App. 280, 238 N.W.2d 582, 585 (1975) (discussion of legislative intent behind a similar statute).

When interpreting tax statutes, there is a presumption against granting exceptions and in favor of taxation. *Tenneco*, 694 P.2d at 100; *State Board of Equalization v. Wyoming Automobile Dealers Ass'n*, 395 P.2d 741, 742 (Wyo. 1964). Although the legislature exempted pollution control devices under W.S. 35–11–1103, we see no corresponding intent to also exempt the expense of operating pollution control equipment. The purposes of a provision designed to prevent a windfall should not be frustrated by requiring taxpayers to "pick up the tab" for expenses not within the contemplation of the legislature. Accordingly, we uphold the agency's interpretation of the statute as applied to General Chemical.

Appellant next challenges application of the agency's procedural regulations to its case. Appellant claims that Chapter XXV of the Rules and Regulations of the Wyoming State Tax Commission required the county assessor's recommendation to be presented to the director of the Ad Valo-

rem Tax Division and the State Board of Equalization for their review at a regular or specially-called Board meeting. Appellant argues this procedure was not followed in its case.

Appellant's contention is based upon a memo to Chuck Gerschefske, Director, Ad Valorem Tax Division, from two of the Division's appraisers. The memo states, in pertinent part, as follows:

"The cluster representative and/or county representative will then present the application and recommendation to the Director of the Ad Valorem Tax Division and the State Board of Equalization for their consideration. This presentation will take place during a regular and/or specially called Board meeting."

This document was circulated to the county assessors as 1989 procedures for reporting pollution control equipment located within each county. The circulation memo stated as follows: "At this time the State Board of Equalization is preparing formal rules and regulations for implementation of the procedures." Appellant claims this document was later "formalized" as Chapter XXV of the Board's rules. However, an examination of Chapter XXV of the Rules and Regulations as adopted on January 27, 1989, shows that only the following requirements concerning the county assessor's recommendations were given effect:

"Section 5. * * * On or before March 15th, the assessor shall make a written recommendation for each application to the Director, Ad Valorem Tax Division, Department of Revenue and Taxation accompanied by a copy of the application filed. A copy of the recommendation for

each facility and equipment shall also be provided to the respective company by the assessor.

"Section 6. * * * Annually, on or before April 1st, the State Board of Equalization shall certify to the respective county assessors the type and amount of exemption to be allowed for the current tax year for each application presented. Written notice of the exemption shall also be mailed to each applicant who shall have thirty days in which to file written objection thereto with the State Board of Equalization pursuant to Chapter XVII hereof."

 It seems clear that when the Board adopted its formal rules and regulations it changed the requirements to be followed from those in the memo. The subsequent formal rules and regulations control over an informal memorandum written before their adoption. The record shows that the requirements contained in Chapter XXV of the Rules and Regulations were complied with, with the exception that the State Board did not rule on General Chemical's application until May 15, 1989. Under the circumstances, we cannot say that the agency's action was made "[w]ithout observance of procedure required by law." W.S. 16–3–114(c)(ii)(D) (July 1990 Repl.)

The decision of the State Board of Equalization is affirmed.