915 P.2d 1184 (1996)
LARAMIE COUNTY BOARD OF EQUALIZATION, Appellant (Petitioner),
v.
WYOMING STATE BOARD OF EQUALIZATION; and Frontier Refining, Inc., Appellees (Respondents). (Two Cases.)
Nos. 95-96, 95-134.
Supreme Court of Wyoming.
April 30, 1996.
Kathy Karpan, Acting Laramie County Attorney; Margy White, Acting Laramie County Attorney, Cheyenne; Theodore E. Lauer, Director, and David C. Holtz, Student Intern, Prosecution Assistance Program, Laramie, for appellant.
Lawrence J. Wolfe, P.C., and Susan E. Laser-Bair of Holland & Hart, Cheyenne, for appellee Frontier Refining Inc.
William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Cheyenne, for appellee Wyoming State Board of Equalization.
Wade E. Waldrip and Thomas A. Thompson of Williams, Kelly & Waldrip, Rawlins, for Wyoming County Commissioners Association as Amicus Curiae.
Mark R. Stewart of Hickey, Mackey, Evans, Walker & Stewart, Cheyenne, for Laramie County School District No. One as Amicus Curiae.
Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and VOIGT, District Judge.
*1186 GOLDEN, Chief Justice.
The Laramie County Board of Equalization appeals two Wyoming State Board of Equalization decisions concerning the desulfurization equipment recently added to Frontier Refining, Inc.'s refinery. Reversing the Laramie County Board of Equalization, the Wyoming State Board of Equalization determined the equipment was primarily installed for pollution control purposes and is exempt from ad valorem taxes pursuant to WYO.STAT. § 35-11-1103.
We reverse.

ISSUES
Appellant Laramie County Board of Equalization (County Board) presents the following issues:
I. Whether this Court should accord any deference, in fact or law, to the State Board of Equalization's decision or whether it should treat it as an intermediate level of review and focus on the decision of the Laramie County Board of Equalization as if on appeal for the first time.
II. Whether there is a well-founded doubt that the exemption applies to Frontier Refinery's desulfuring equipment and thus any ambiguity is resolved in favor of taxation.
III. Whether the county board's denial of a tax exemption for Frontier Refinery's desulfuring equipment is supported by substantial evidence and is not contrary to law.
Appellee Frontier Refining, Inc. (Frontier) presents only one issue:
1. Whether the State Board of Equalization correctly concluded that equipment at Frontier's refinery is exempt from ad valorem tax as pollution control equipment under W.S. XX-XX-XXXX.
Appellee State Board of Equalization (State Board) presents the issue as:
Did the State Board of Equalization correctly conclude that the equipment was entitled to pollution control exemption under W.S. XX-XX-XXXX and therefore properly order remand to the county for determination of marketable by-product exclusion?
The Wyoming County Commissioners Association filed an amicus curiae brief supporting the County Board's position and presented the following issue:
Whether this Court should adopt an objective test or a subjective test in determining whether property is "primarily designed, installed and utilized" for pollution control?
Finally, Laramie County School District Number One also filed an amicus curiae brief supporting the County Board's position and presenting the following issues:
A. Did the State Board of Equalization fail to give appropriate deference to the *1187 decision of the Laramie County Board of Equalization's decision denying the tax exemptions sought by Frontier Refining for pollution control equipment?
B. Did the State Board of Equalization fail to apply the presumption against tax exemptions in overturning the decision of the Laramie County Board of Equalization which denied the pollution control tax exemptions sought by Frontier Refining?
C. Did the State Board of Equalization err in granting the tax exemptions on the basis that the equipment was designed, installed and utilized primarily for pollution control?

FACTS
Frontier Refining, Inc. owns and operates a refining facility in Cheyenne, Laramie County, Wyoming, which processes crude oil primarily for the production of diesel fuel and gasoline. In 1990, Congress amended the Clean Air Act to reduce the amount of sulfur allowed in diesel fuel sold for on-road use, effective October 1, 1993. The amendment restricted the amount of sulfur allowed in Frontier's main product, on-road diesel. Frontier responded by making several modifications to its refining plant. The modifications included a new sulfur recovery unit, a sulfur recovery plant, which was built in 1984, but its capacity is augmented by the new sulfur recovery unit, an amine treater,[1] a hydrogen plant and a diesel hydrotreater.[2] For simplicity, we shall refer to all of the equipment at issue in this appeal as "desulfurization equipment" or the "sulfur management system."
In 1993 and 1994,[3] Frontier filed applications for exemptions from the county ad valorem tax. WYO.STAT. § 35-11-1103 (1994) allows ad valorem tax exemptions for equipment "designed, installed and utilized primarily for the elimination, control or prevention of air, water or land pollution." This exemption is commonly known as the "pollution control exemption." The Laramie County Assessor's office, upon advice from its expert, denied the pollution control exemption for Frontier's sulfur management system. After hearing evidence from Frontier and the Assessor, the County Board upheld the Assessor's denial of the pollution control exemption for Frontier's sulfur management system.
Frontier appealed the County Board's denial of the pollution control exemption to the State Board. The State Board vacated the County Board's decisions concerning the desulfurization equipment with orders dated October 6, 1994, and April 10, 1995. The County Board appealed to the District Court of the First Judicial District, filing petitions for writ of review pursuant to WYO.R.APP.P. 12.09. The district court certified the cases to this Court and on June 1, 1995, we signed an order consolidating both appeals.

Statutory framework
A brief review of the statutory framework may be helpful to understand the procedural posture in this case. "Generally, all property in Wyoming is subject to taxation based upon a system of uniform valuation." State Board of Equalization v. City of Lander, 882 P.2d 844, 847 (Wyo.1994); WYO. CONST. Art. 15, § 11. The legislature affirmed its intent to make all property subject to taxation, unless prohibited by law or expressly exempted, when it passed WYO.STAT. § 39-1-102 (1994), which states:
All property within Wyoming is subject to taxation as provided by this act except as prohibited by the United States or Wyoming constitutions or expressly exempted by W.S. 39-1-201.
*1188 WYO.STAT. § 39-1-201(a)(xx) (1994) exempts from taxation "[p]roperty used for pollution control to the extent provided by W.S. XX-XX-XXXX." WYO.STAT. § 35-11-1103 (1994) provides:
The following property is exempt from ad valorem taxation pursuant to the provisions of this act and includes facilities, installations, machinery or equipment attached or unattached to real property and designed, installed and utilized primarily for the elimination, control or prevention of air, water or land pollution, or in the event such facility, installation, equipment or machinery shall also serve other beneficial purposes and use, such portion of the assessed valuation thereof as may be reasonably calculated to be necessary for and devoted to elimination, control or prevention of air, water and land pollution. The department of revenue shall determine the exempt portion on all property assessed pursuant to W.S. 39-2-201 through 39-2-213. The county assessor shall determine the exempt portion on all property assessed pursuant to W.S. 39-2-301 through 39-2-304. The determination shall not include as exempt any portion of any facilities which have value as the specific source of marketable byproducts.
The county assessor is responsible for assessing and determining the exemptions for the property involved in this case. WYO. STAT. §§ 39-2-301(c) and 39-2-201(a) (1994); WYO.STAT. § 35-11-1103 (1994). WYO.STAT. § 39-2-301 (1994 and Cum.Supp.1995) supplies the procedure for the taxpayer to submit a statement of all taxable property and for the county assessor to notify the taxpayer of its assessment. WYO.STAT. § 39-2-302 (1994 and Cum.Supp.1995) provides for protests of assessments to the County Board. WYO.STAT. § 39-1-304 (1994 and Cum.Supp. 1995) requires the State Board to hear appeals from the County Board and to decide all questions concerning the construction of any statute affecting the assessment of taxes. WYO.STAT. § 39-1-306 (1994) allows the County Board to appeal a decision of the State Board which reverses or modifies a County Board decision.

STANDARD OF REVIEW
Union Pacific Railroad v. Wyoming State Bd. of Equalization, 802 P.2d 856 (Wyo.1990), appropriately described the standard of review for cases arising from a county board contested case proceeding, appealed to a state agency and finally arriving in this Court on appeal.
Since in this case the county board was the finder of the fact and the state board heard no additional testimony, we will treat the state board as an intermediate level of review and accord deference only to the county board's findings of fact. Thus, the primary focus of our review will be whether the county board's decision was lawful and supported by substantial evidence.
Union Pacific, 802 P.2d at 859.
The party challenging the sufficiency of the evidence has the burden of demonstrating the agency's decision is not supported by substantial evidence. If the agency action is supported by substantial evidence, its decision should be reversed only for errors of law. If the agency did not apply the correct rule of law, or applied it incorrectly, this Court does not defer to the agency's conclusion. The agency's errors of law are corrected by this Court.
Butts v. Wyoming State Board of Architects, 911 P.2d 1062, 1065 (Wyo.1996) (citing Devous v. Board of Medical Examiners, 845 P.2d 408, 414 (Wyo.1993)) (citations omitted).
The scope of appellate review of agency decisions is provided by statute:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and

*1189 (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
WYO.STAT. § 16-3-114(c) (1990).
In both of its decisions, the State Board correctly stated the standard of review for contested issues of fact.
We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence.
State ex rel. Wyoming Worker's Compensation Div. v. White, 837 P.2d 1095, 1098 (Wyo.1992) (quoting Trout v. Wyoming Oil & Gas Conservation Comm'n, 721 P.2d 1047, 1050 (Wyo.1986)).

DISCUSSION
This case requires us to interpret the phrase "designed, installed and utilized primarily for the elimination, control or prevention of" pollution, found in WYO.STAT. § 35-11-1103 (1994), and to apply that interpretation to the facts in this case. The County Board urges us to interpret WYO.STAT. § 35-11-1103 narrowly, finding the primary use for Frontier's sulfur management system is production of a marketable product. Frontier and the State Board ask us to interpret WYO.STAT. § 35-11-1103 more broadly, finding the primary use for Frontier's sulfur management system is pollution control, because the integrated system is required to produce diesel fuel in compliance with the 1990 amendments to the Clean Air Act. In other words, Frontier and the State Board would allow the pollution control exemption when equipment is necessary to produce a product which pollutes less.
We summarized our rules of statutory construction in General Chemical Corp. v. Wyoming State Bd. of Equalization, 819 P.2d 418 (Wyo.1991):
[T]his court looks only to the intent of the legislature when enforcing or construing statutes. * * * Legislative intent must be ascertained initially and primarily from the words used in the statute. * * * If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. * * * We previously have articulated the proposition that a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. The converse of this proposition is that the statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. The question of whether an ambiguity exists in a statute is a matter of law to be determined by the court.
General Chemical, 819 P.2d at 420 (quoting Allied-Signal, Inc. v. State Board of Equalization, 813 P.2d 214, 219-20 (Wyo.1991)) (citations omitted).

Scope of Pollution Control Exemption
We must decide whether the County Board's interpretation of WYO.STAT. § 35-11-1103 reflects the intent and purpose of the legislature. In 1991, the legislature removed the responsibility for executing WYO.STAT. § 35-11-1103 for local property from the State Board and gave that responsibility to Wyoming's county assessors. 1991 Wyo.Sess.Laws Ch. 249, Sec. 1; Exxon Co., *1190 USA, Docket No. 92-185, p. 5 (State Bd. of Equalization 1993). The construction placed on a statute by the agency charged with its execution is entitled to deference as long as it does not conflict with the legislature's intent. General Chemical, 819 P.2d at 422; State Bd. of Equalization v. Tenneco, 694 P.2d 97, 99-100 (Wyo.1985), and see Exxon Co., USA, Docket No. 92-185, p. 5 (State Bd. of Equalization 1993).
We discussed the legislative intent or purpose behind WYO.STAT. § 35-11-1103 in Tenneco and General Chemical.
This exemption was obviously intended to provide a tax incentive that would encourage the design, installation and utilization of pollution control equipment and devices for the beneficial public purpose of reducing or eliminating environmental pollution to the extent practical.
Tenneco, 694 P.2d at 100. The Tenneco court then held "that pollution control equipment is exempt upon acquisition if of a type that is ordinarily designed, installed and utilized primarily for pollution control." Tenneco, 694 P.2d at 100. In the cases before us, the County Board heard evidence that the equipment in question is ordinarily used to produce low sulfur diesel fuel.
We repeat our oft-stated rule applied to tax exemptions, and this tax exemption in particular. "When interpreting tax statutes, there is a presumption against granting exceptions and in favor of taxation." General Chemical, 819 P.2d at 422. Although WYO.STAT. § 35-11-1103 exempts pollution control devices from taxation, we see no evidence of an intent by the legislature to exempt equipment which is necessary to produce a marketable final product, even if that final product pollutes less when consumed by an end-user and even if environmental regulations require the modification to the final product. Such a reading of the statute would lead to a windfall for the corporate taxpayer, requiring the citizen taxpayers to pick up the tab for modifying, modernizing, or possibly even erecting a plant which produces a final product which pollutes less or meets environmental standards. Frontier and the State Board attempt to broaden the meaning of "designed, installed and utilized primarily" for pollution control beyond the intent of the legislature. The County Board appropriately applied a narrow construction to the statute. Therefore, we reverse the determination of the State Board of Equalization and reinstate the decision of the Laramie County Board of Equalization.

Determination of the Primary Purpose Findings of Fact
Determining whether a device is primarily for pollution control is not an easy matter. See Chemical Waste Management, Inc. v. State, 512 So.2d 115, 116-17 (Ala.Civ. App.1987). The County Board must weigh the evidence presented to it and determine if, as between several stated purposes for the equipment, the primary purpose is pollution control. In its 1994 decision, the County Board made the following findings of fact (transcript cites omitted):
7. The Assessor disallowed the pollution control exemption for the Sulfur Plant, Sulfur Plant Engineering SRU # 2, Amine Unit, Hydrogen Plant, Hydrotreater and Upgraded Flare Knockout System.
8. The refining process at Frontier produces primarily diesel fuel and gasoline from crude oil. About half of Frontier's market is an on-road diesel market.
9. Sulfur is a naturally occurring contaminant in the crude petroleum oils used to make diesel fuel. The removal of sulfur from the petroleum oils is necessary for the manufacture of diesel fuel.
10. Frontier desulfurizes diesel fuel by taking the unhydrotreated, or high sulfur diesel, and mixing it with hydrogen manufactured at Frontier's hydrogen plant in a diesel hydrotreater. The diesel hydrotreater is a catalytic system which removes the sulfur from high sulfur diesel and combines it with hydrogen, forming the hydrogen sulfide. The hydrogen sulfide gas is then routed to an amine unit which separates the hydrogen sulfide gas from other gaseous materials and sends the hydrogen sulfide gas in a pure form to the sulfur recovery unit, which converts the hydrogen sulfide gas into elemental sulfur and burns the remainder in the incinerator. See Exhibit 3 (F-5).

*1191 11. Frontier constructed the hydrogen plant to supply hydrogen for the process of removing sulfur from the diesel fuel. The hydrogen plant reacts methane (natural gas purchased from Cheyenne Light) with a catalyst under high temperatures and pressures generating hydrogen and carbon dioxide. The hydrogen and carbon dioxide are then separated from each other through a diethanolamine ("DEA") system. The hydrogen is then routed to the diesel hydrotreater and the carbon dioxide is vented. See Exhibit 3(F-6).
12. The diesel hydrotreater is actually the process unit that accomplishes the desulfurization of the diesel fuel. It is a reactor with a catalyst that allows removal of the sulfur from the high sulfur diesel, producing a desulfurized diesel fuel meeting the federal environmental requirements and leaving gaseous hydrogen sulfide known as H2S. See Exhibit 3(F-7).
13. The H2S gas then goes to the DEA treater, known as Frontier's Amine Unit. The Amine Unit separates the hydrogen sulfide from carbon dioxide or other gases, including methane, ethane, and propane. This process creates a very high purity hydrogen sulfide stream that then goes to the sulfur plant. These gases, along with other gases, are burned in the refinery for heat recovery. See Exhibit 3(F-8).
14. From the Amine Unit, the H2S goes to the sulfur recovery units to undergo a process that converts hydrogen sulfide gas, gaseous hydrogen sulfide into elemental sulfur, and sends the remaining gas to a tail gas treatment unit, which recovers a little bit more of the hydrogen sulfide, and then to the incinerator for combustion. See Exhibit 3 (F-9). There are two sulfur recovery units: the 35 ton-per-day unit that is called the sulfur plant and was constructed in 1984 and the sulfur recovery unit # 2 which is the new 65 ton-per-day unit that went into service in 1992.
Based on these findings of fact the County Board concluded:
4. The desulfurization equipment; to-wit: Sulfur Plant, Sulfur Plant Engineering SRU #2, Amine Unit, Hydrogen Plant, and Hydrotreater do not qualify for pollution control exemption under W.S. § 35-11-1103 and W.S. § 39-1-201(a)(xx), as the same were not designed, installed and utilized primarily for the elimination, control or prevention of air, water or land pollution.
5. The County Assessor, through Pickett, stated that the equipment which was denied the pollution control exemption "because they're primary and essential parts of the plants . . ." and this Board agrees with that analysis. This appears to be an interpretation of the State Board of Rules which provide:
Other beneficial purposes "means uses of property which are a value to the taxpayer such as . . . [p]roperty which functions as an essential item in the . . . industrial process or facility. Rules, Chapter XXX, Sec. 9(c)(i), State Board of Equalization.
In its decisions the State Board declared the County Board's determinations that the equipment is used "for the purposes of manufacturing a better product" (1993) and that the equipment constitutes "primary and essential parts of the plants" (1994) are not supported by the record or its own findings of fact. The State Board then announced that "[i]t is only because of environmental concerns and requirements the diesel fuel and gaseous hydrogen sulfide must be treated. We conclude, therefore, the equipment at issue constitutes pollution control devices for purposes of exemption allowed by W.S. § 35-11-1103." However, the State Board improperly broadened the scope of the exemption statute when it focused on the purpose of the final product, low-sulfur diesel fuel, rather than on the purpose of the equipment.

Primary vs. Other Purposes
Appellees also appear to assert that the equipment used after the diesel has been processed, which processes the H2S gas, is "primarily pollution control equipment," because it is not necessary to produce the fuel, but is necessary to process the poisonous hydrogen sulfide gas by-product. However, the County Board heard testimony concerning several purposes for the sulfur plant, the sulfur recovery unit and the amine unit. The *1192 purposes included: to "manufacture diesel according to current standards for highway consumption," "for the purpose of product and by-product recovery essentially," that the entire system is an integrated system "to produce compliant fuel and also meet other environmental emission standards" and that the amine treater and sulfur recovery units are necessary for "safety and health and risk management and insurance." When the evidence presents more than one purpose for equipment, the County Board, as the finder of fact, is responsible for determining whether the primary purpose of the equipment is pollution control. See State Bd. Of Equalization v. City of Lander, 882 P.2d 844, 848 (Wyo.1994); City of Cheyenne v. Sims, 521 P.2d 1347, 1349 (Wyo.1974) (concerning statute exempting property used primarily for a governmental purpose). The County Board determined pollution control is not the primary purpose of the equipment. In State Bd. of Equalization v. City of Lander, we held:
The term "primarily" has an ordinary and obvious meaning in the law. "Primarily" means "of first importance" or "principally." The term "primarily" may also be synonymous with "essentially" or "fundamentally" in some circumstances.
City of Lander, 882 P.2d at 850 (citations omitted).
Substantial evidence in the record before the County Board supports its denial of the pollution control exemption in this case. We do not substitute our judgment for factual determinations supported by substantial evidence. White, 837 P.2d 1095, 1098.

CONCLUSION
The Laramie County Board of Equalization appropriately interpreted WYO.STAT. § 35-11-1103 narrowly, refusing to exempt equipment necessary to produce a marketable product from taxation. The County Board's decision that Frontier's sulfur management system is not primarily for pollution control is supported by substantial evidence and not contrary to law. Therefore, the State Board of Equalization's orders reversing the County Board are reversed.
NOTES
[1] The 1993 assessment is the subject of Wyoming Supreme Court case number 95-96. At issue from the 1993 assessment are the sulfur plant, sulfur recovery unit, and amine unit.
[2] The 1994 assessment is the subject of Wyoming Supreme Court case number 95-134. At issue from the 1994 assessment are the sulfur plant, sulfur recovery unit, amine unit, hydrogen plant, and hydrotreater unit. The hydrogen plant and hydrotreater were not completed until 1993 and were not available for exemption until the 1994 assessment.
[3] The assessments, county board hearings and appeals to the state board involved two separate cases for 1993 and 1994. The two cases were not consolidated until they reached this Court. However, the parties have stipulated that the issues on appeal for both cases are identical.