CHEVRON U.S.A., INC., a Pennsylvania corporation, Appellant (Petitioner),

v.

STATE of Wyoming, Wyoming State Board of Equalization and its members Nancy Freudenthal, Marvin Applequist and Terry Rubald, in their official capacities; and the Department of Revenue and Taxation, State of Wyoming, Appellees (Respondents).

No. 95–214.

Supreme Court of Wyoming.

June 18, 1996.

Rehearing Denied July 16, 1996.

William J. Thomson and Brandin Hay of Dray, Madison & Thomson, P.C., Cheyenne; and Gary S. Hook, Chevron Corporation, San Francisco, California, for appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General, Cheyenne, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Chevron U.S.A., Inc. appeals the Wyoming State Board of Equalization's interpretation of former Wyo.Stat. § 39–2–202(b) which determined that the expenses of operating Chevron's Birch Creek compressor station were nondeductible expenses of production for ad valorem and severance tax purposes.

We reverse.

## ISSUES

Chevron U.S.A., Inc. (Chevron) presents a single issue for our review:

Did the district court err in affirming the State Board of Equalization's interpretation of former Wyoming Statute § 39–2–202(b) and rules promulgated thereunder by the Department of Revenue and Taxation determining that the costs of operating Chevron's Birch Creek compressor station facility were nondeductible "expenses of production" for ad valorem and severance tax purposes?

Wyoming State Board of Equalization (Board) presents two issues:

I. Where is the point of valuation for natural gas under W.S. 39–2–202(b) (1985 pamphlet)?

II. Do the activities at Chevron's compressor station constitute processing or transportation?

## FACTS

Chevron produces natural gas from several wells in the Birch Creek field in Sublette County, Wyoming. The gas in the Birch Creek field is low in hydrogen sulfide and meets pipeline specifications without removal of hydrogen sulfide. After the gas is extracted from the wells in the Birch Creek field, it runs through a three-phase separator at the wellhead. The separator separates condensate, water, and gas from the natural gas well stream. The gas is then run through a dehydrator. After dehydration, the condensate and gas streams are remixed at the wellhead. Gathering pipelines then transport the gas from the well-head through at least a mile of pipeline to the Birch Creek compressor station.

The compressor station consists of several large compressors housed in specially constructed buildings, associated piping, a three-phase separator, tankage, and other associated equipment. At the inlet of the compressor station, the gas-condensate mix flows through another three-phase separator, which separates the gas, condensate, and any residual water, resulting in dry gas. Finally, the dry gas is compressed to facilitate its injection into the pipeline.

Chevron sells its Birch Creek gas at the outlet of the compressor station. The gas is delivered into Northwest Pipeline Company's 30–inch, high pressure pipeline which operates at approximately 800 pounds per square inch. Northwest also has a 16–inch, low pressure pipeline which transports gas from the Birch Creek field without compression. However, all of Chevron's Birch Creek gas is transported on the high pressure pipeline because the low pressure pipeline is fully nominated. The compressor station is necessary to boost the pressure of the gas for transportation in the high pressure pipeline. All Birch Creek gas must be run through a compressor to be injected into the high-pressure pipeline.

Chevron reported its gas production from 1984 through 1989, the years relevant to this appeal, pursuant to Wyo.Stat. § 39–2–201. In its 1984, 1985, 1987 and 1988 reports, Chevron treated its Birch Creek operating expenses as processing costs pursuant to Wyo.Stat. § 39–2–202 and the Department's rules and regulations, excluding the expenses from the taxable value of the gas for ad valorem and severance tax purposes. In 1992, the Department of Revenue performed an audit on Chevron's reported production for 1984 through 1989, disallowed the deduction for operating costs of the compressor facility and ordered Chevron to pay additional tax, interest and a penalty.

Chevron appealed the Department's order and the issues were submitted to the Board on briefs of the parties. The Board subsequently entered a final order, concluding the compression expenses were not processing or transportation costs and may not be deducted when valuing the gas. The Board vacated the penalty assessment. Chevron filed a petition for review in the District Court for the First Judicial District on December 1, 1993. In the petition, Chevron asked the court to find the Board's order denying the deduction for costs of the Birch Creek compression facility unlawful. Chevron also asked the court to enter a judgment ordering the deduction of the Birch Creek compression expenses as costs of processing and/or transportation in arriving at the value of Chevron's natural gas production. The district court issued a decision letter and an order affirming the Board's decision. Chevron's motion to reconsider was denied and Chevron filed this appeal.

## STANDARD OF REVIEW

When considering an appeal from a district court's review of agency action, we do not accord any special deference to the district court's decisions on questions of law. *Union Pacific Railroad Co. v. Wyoming State Bd. of Equalization,* 802 P.2d 856, 859 (Wyo.1990). "Using the same evidentiary materials and the same review standards as the district court, we conduct an independent inquiry into the matter, just as if it had proceeded directly to us from the agency."

*Id.* (quoting *Southwest Wyoming Rehab. Center v. Employment Sec. Comm'n,* 781 P.2d 918, 920 (Wyo.1989)).

■ To resolve the issue in this case, we must interpret WYO.STAT. § 39–2–202(b) and apply that interpretation to the facts. Statutory interpretation is a question of law and is reviewed *de novo. Trefren v. Lewis,* 852 P.2d 323, 325 (Wyo.1993); *B & R Builders v. Beilgard,* 915 P.2d 1195, 1197 (Wyo.1996). If an agency's action "is supported by substantial evidence, its decision should be reversed only for errors of law. If the agency did not apply the correct rule of law, or applied it incorrectly, this Court does not defer to the agency's conclusion. The agency's errors of law are corrected by this Court." *Laramie County Board of Equalization v. Wyoming State Board of Equalization,* 915 P.2d 1184, 1188 (Wyo.1996) (quoting *Butts v. Wyoming State Board of Architects,* 911 P.2d 1062, 1065 (Wyo.1996)).

WYO.STAT. § 16–3–114(c) and WYO.R.APP.P. 12.09 provide the scope for our review of agency decisions:

To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. * * * The reviewing court shall:

\* \* \* \* \* \*

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

\* \* \* \* \* \*.

WYO.STAT. § 16–2–114(c) (1990). Since the issues presented in this case involve statutory interpretation, our review will focus on whether the Board's decision was in accordance with law and within its statutory authority, right or jurisdiction. WYO.STAT. § 16–2–114(c) (1990).

## DISCUSSION

■ This case requires us to interpret WYO.STAT. § 39–2–202 to determine the valuation point of natural gas for severance and ad valorem tax purposes. The Board argues that the point of valuation is at the outlet of the compressor facility, where the gas enters the pipeline for transportation to market. Chevron argues the point of valuation is at the inlet of the compressor station, before the gas is compressed for transportation to market. If the point of valuation is at the outlet of the compressor facility, Chevron's Birch Creek compressor expenses are not deductible when calculating the value of the natural gas. If the point of valuation is at the inlet of the compressor facility, the compression expenses are deductible.

During the years relevant to this appeal, WYO.STAT. § 39–2–202 provided the legislative authority for determining the point of valuation for natural gas. The relevant portion of the statute stated:

(a) Based upon the information received or procured pursuant to W.S. 39–2–201(b) or (c), the board shall annually value the gross product for the preceding calendar year, in appropriate unit measures of all mines and mining claims from which valuable deposits are produced, at the fair cash market value of the product at the mine or mining claim where produced, after the mining or production process is completed.

(b) The . . . production process is deemed completed when the mineral product is removed from the . . . well, and prior to any . . . further processing is placed in storage prior to transportation to market, or in the case of natural gas, in the pipeline for transportation to market.

1977 Wyo.Sess.Laws Ch. 45, § 1; WYO.STAT. § 39–2–202 (1977). Pursuant to the statute, the Board annually values the gross product of all mines and mining claims at the fair market cash value of the mineral product at the mine or mining claim where produced after the production process is completed. Thus, the point of valuation is at the mine or

mining claim after the production process is completed. WYO.STAT. § 39–2–202(a) (1977). Subparagraph (b) of WYO.STAT. § 39–2–202 designates the point at which the production process is complete. According to the statute, the production process is complete when the product is removed from the well, and prior to any further processing, is placed in the pipeline for transportation to market. WYO.STAT. § 39–2–202(b) (1977).

■ In determining whether Chevron's Birch Creek compressor station expenses are costs of production (as the Board contends) or processing and/or transportation expenses incurred after production (as Chevron contends),

> [w]e endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.*

*State Dept. of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994) (citations omitted). When a statute is clear and unambiguous, we give effect to the plain language of the statute. *Id.*

> If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. * * * We previously have articulated the proposition that a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. The converse of this proposition is that the statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. The question of whether an ambiguity exists in a statute is a matter of law to be determined by the court.

*Laramie County Board of Equalization,* 915 P.2d at 1189 (quoting *General Chemical Corp. v. Wyoming State Bd. of Equalization,* 819 P.2d 418, 420 (1991)).

■ The term "production" may be subject to various meanings depending upon the context in which it is used. *See Appeal of Monolith Portland Midwest Co., Inc.,* 574 P.2d 757, 761–62 (Wyo.1978); 8 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW 47 (Cum.Supp.1995). However, we hold that the statutory language of WYO.STAT. § 39–2–202 is clear and unambiguous in the context of this case. The terms are not vague or uncertain and they are not subject to various meanings in the context of a severance and ad valorem tax statute such as WYO.STAT. § 39–2–202. "Severance tax" is defined as "a tax on mineral or forest products at the time they are removed or severed from the soil...." BLACK'S LAW DICTIONARY 1374 (6th ed. 1990). The processes necessary for production of gas, for severance and ad valorem tax purposes, are those necessary to sever or remove the gas from the well. *Shamrock Oil and Gas Corp. v. Commissioner of Internal Revenue,* 346 F.2d 377, 379–80 (5th Cir.1965), *cert. denied,* 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149 (1965); JOHN C. JACOBS, PROBLEMS INCIDENT TO THE MARKETING OF GAS, 5 INSTITUTE ON OIL AND GAS LAW AND TAXATION 271, 273 (1954). Therefore, we hold that those processes which are not necessary to remove the gas from the well are post-production expenses. This includes compression which is not necessary to remove the gas from the well. *See Shamrock,* 346 F.2d at 379–80; *Mountain Fuel Supply Co. v. United States,* 449 F.2d 816, 823–24 (10th Cir.1971), *cert. denied* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

■ "It is elementary that taxation is a legislative function and that taxes may be impressed, levied, assessed and collected only under the statutory authority and in the manner provided by law." *Kelsey v. Taft,* 72 Wyo. 210, 217, 263 P.2d 135, 136 (1953). Taxes should not be assessed by any means other than a clear, definite and unambiguous statement of legislative authority. *Kelsey,* 72 Wyo. at 219, 263 P.2d at 138.

> "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, be-

yond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen."

*Kelsey,* 72 Wyo. at 219–20, 263 P.2d at 138 (quoting *Gould v. Gould,* 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917)). The Board impermissibly exceeded its statutory authority when it included the expense of compressing the gas as a production expense, since the compression at the compressor station was not necessary to remove the gas from the well.

Further, under the plain wording of the statute, production is completed when the gas is **removed from the well**, and prior to **any** further processing. The Board improperly disregarded the intent of the legislature that "[t]he ... production process is deemed completed when the mineral product is removed from the ... well." Wyo.Stat. § 39–2–202(b) (1977). Instead, the Board and the district court focused on the phrase "placed in ... the pipeline for transportation to market." We must read statutes *in pari materia,* and cannot disregard portions of a statute when interpreting the legislature's intent. *Pacificorp,* 872 P.2d at 1166.

The Board improperly interpreted the terms "any further processing" when it determined:

2. The Birch Creek compressor facility is not designed to remove elements or compounds from the gas which affect the qualities or marketability of the gas. The facility does not substantially transform the sweet gas-condensate stream into a more valuable, higher quality product, nor does it substantially improve marketability by any process which transforms the gas for a use to which the original gas stream could not be readily applied.

\* \* \* \* \* \*

11. The only "processes" which change Petitioner's gas-condensate stream are activities which separate the stream into dry gas and condensate. These activities are functionally similar, if not identical, to the field processes employed by Petitioner, the costs of which are not claimed as deductions. These "processes" are not commonly considered "processing"....

12. Based on our finding the facility neither substantially transforms the gas-condensate stream into a more valuable, higher quality product, nor substantially improves the marketability of the gas, we conclude the activities of the Birch Creek compressor facility do not constitute processing under the relevant mineral valuation statutes or rules.

The statute clearly provided that the production process is completed prior to any further processing. "Any" is a modifier which is intended to be inclusive, not exclusive. It pertains to "every," "all," "unmeasured or unlimited in amount, number, or extent." *See* Merriam-Webster's Collegiate Dictionary 53 (10th ed. 1994). The Board improperly excluded compression used for purposes other than severance of the gas from the well from the meaning of the phrase "any further processing." *See* 1 Robert Polevoi & Cecil L. Smith, Federal Taxation of Oil and Gas Transactions § 3.02[2], at 3–11 (1988) (compression of gas to meet specifications of the pipeline company is a manufacturing process); Rev. Rul. 75–6, 1975–1 C.B. 178 (compression of natural gas to covert it into a product with a higher delivery pressure for injection into pipeline is a manufacturing process). The Board interpreted the terms "any further processing" too narrowly. By so doing, the Board improperly included compression costs, which were not necessary for the production of gas, as taxable production costs. Tax statutes are to be construed in favor of the taxpayer and are not to be extended absent clear intent of the legislature. *Kelsey,* 72 Wyo. at 219–20, 263 P.2d at 138.

Finally, the Department of Revenue's own rules and regulations, in effect from 1986 until an attorney general opinion was written in 1989, belie the Board's narrow interpretation of "processing" in this case. Chapter XXI, Section 4(j) of the Wyoming Department of Revenue and Taxation Ad Valorem and Severance Taxes on Mineral Production regulations (adopted February 19, 1986), defined processing.

"Processing" shall mean any activity or method, including but not limited to crushing, milling, washing, drying, refining, upgrading, treating, heating, separating, dehydrating or compressing which is intended to improve the quality or marketability of a mineral after mining or production is completed. "Processing" is considered to be synonymous with the word "beneficiation."

Although the Board is entitled to change its rules and regulations in order to carry out the intent of the legislature, we hold that the definition of processing found in the 1986 Department of Revenue and Taxation's rules and regulations more closely matches the intent and purpose of the taxation statute at issue in this case. In this case, compressing the gas clearly improved the marketability of the gas since without the compression, the gas could not be injected into the high pressure pipeline for transportation to market.

## CONCLUSION

The district court erred in affirming the Board's decision which denied Chevron's deductions for the operating costs of the Birch Creek compressor station. The compression costs were not production costs because the compression was not necessary to remove the gas from the well. The compression costs were, on the other hand, deductible processing costs under WYO.STAT. § 39–2–202(b) and the Department of Revenue and Taxation's 1986 rules and regulations. Therefore, this Court reverses the decisions of the district court and the Wyoming State Board of Equalization.

MACY, Justice, dissenting.

I believe that the Wyoming State Board of Equalization's decision should be affirmed, and, therefore, I dissent from the majority's opinion in this case.

I do not agree with the majority's interpretation of WYO.STAT. § 39–2–202(a) (1985) (amended 1989, 1990 & 1991) and WYO.STAT. § 39–2–202(b) (1985) (amended 1990). Section 39–2–202(a) directed the State Board of Equalization to determine the value of the natural gas "at the mine or mining claim where produced, after the ... production process [was] completed." *See Amax Coal West, Inc. v. Wyoming State Board of Equalization,* 896 P.2d 1329 (Wyo.1995) (valuing coal production). Section 39–2–202(b) stated that the "production process [was] deemed completed when the [gas was] removed from the ... well, and prior to any ... further processing [was] placed in ... the pipeline for transportation to market." (Emphasis added.)

The statute clearly and unambiguously stated that, when the gas was not subjected to further processing between the wellhead and the inlet to the pipeline, the point of valuation was at the inlet to the pipeline. The majority reads the statute without giving any effect to the phrase "placed ... in the pipeline for transportation to market." The majority further concludes that compression amounted to "further processing" of the gas. The Court did not, however, define the term "processing" in reaching its conclusion.

A common definition of the word "process" is "mode, method or operation whereby a result is produced; and means to prepare for market or to convert into marketable form." BLACK'S LAW DICTIONARY 1084 (5th ed. 1979). This definition is consistent with the State Board of Equalization's regulatory definition of processing which is quoted in the majority opinion. The State Board of Equalization specifically found that the compressor facility did not change the gas in any way which would affect its marketability. Therefore, under the plain language of the statute, the compression did not amount to further processing, and the gas should have been valued at the inlet to the pipeline.